[No. 52715-6. En Banc. July 10, 1986.]

SID SNYDER, ET AL, *Petitioners,* v. RALPH MUNRO, *as Secretary of State,* ET AL, *Respondents.*

---

[6]*State v. Parker,* 97 Wn.2d 737, 741, 649 P.2d 637 (1982).

[7]RCW 69.50.505(a)(4) *et seq.*

*Jeff Campiche* and *Sherrie Bennett Campiche,* for peti-

tioners.

*Kenneth O. Eikenberry*, Attorney General, *James M. Johnson*, Senior Assistant, and *Shirley W. Battan*, Assistant, for respondents.

DOLLIVER, C.J.—Plaintiffs petition this court for an alternative writ of mandamus and prohibition and submit a complaint for a declaratory judgment that the portion of RCW 44.07B, which establishes the boundaries in state legislative (representative) districts (19–A, 19–B, 39–A, 39–B (RCW 44.07B.190, .195, .390 and .395)), be found defective under the federal and state constitutions. We find RCW 44.07B constitutional and, therefore, deny plaintiffs' petition.

The facts are stipulated by the parties. The present Washington state legislative districting scheme consists of 51 legislative districts and 49 senatorial districts defined by RCW 44.07B (Laws of 1981, ch. 288 and Laws of 1981, 2d Ex. Sess., ch. 5). In 47 of the Washington state legislative–senatorial districts, one state senator and two state representatives are elected at large. In four of the state legislative districts (19–A, 19–B, 39–A, 39–B), only one state representative is elected. One state senator serves in senate district 19 and another serves in senate district 39.

Aside from districts 19–A, 19–B, 39–A, and 39–B, the average population in the other 47 districts is 82,444 (a high of 86,109 and a low of 82,392). The population of the districts at issue is as follows: 19–A is 44,039; 19–B is 41,743; 39–A is 41,734; and 39–B is 43,126. Plaintiffs are qualified registered voters residing in Washington state legislative districts 19–A, 19–B, 39–A, and 39–B.

Shortly after the redistricting statute passed, the Republican State Committee of Washington and Jennifer Dunn brought an action in United States District Court for the Western District of Washington, at Seattle, against Ralph Munro, et al (joined, among others, by the Democratic State Committee of Washington and the Democratic State

Central Committee as defendants) seeking a declaratory judgment to determine the validity of the statute. On February 25, 1982, a 3–member panel of the court declared the statute to be constitutionally valid pursuant to U.S. Const. amend. 14, § 1.

In November 1983, the voters of Washington approved amendment 74 to the Washington State Constitution. Pursuant to article 23, amendment 74 became Const. art. 2, § 43 on November 8, 1983. Const. art. 2, § 43 sets forth the process for legislative redistricting to begin in 1991.

## I

Defendants move to dismiss this action in its entirety on the basis that the constitutionality of RCW 44.07B has been determined "conclusively and with finality" by an agreed judgment signed by a 3–member panel of the United States District Court for Western Washington in Republican State Committee of Washington and Jennifer Dunn v. Ralph Munro, et al, No. C81–596 (Feb. 25, 1982). We agree the prior judgment bars, by res judicata, any subsequent action under the federal constitution.

The doctrine of res judicata bars a second action if that action has a "concurrence of identity" with a prior judgment. *Rains v. State,* 100 Wn.2d 660, 663, 674 P.2d 165 (1983). The areas of concurrence are the following: (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made. *Rains v. State, supra.* This doctrine is applicable to actions involving constitutional rights as well. *Rains v. State, supra.* The doctrines of res judicata or collateral estoppel do not apply, where the issues and the parties are not the same. *International Bhd. of Pulp, Sulphite & Paper Mill Workers v. Delaney,* 73 Wn.2d 956, 960, 442 P.2d 250 (1968).

The element frequently in conflict in res judicata issues is whether the identity of parties is the same for res judicata purposes. The identity of the parties is not a mere matter of form, but is one of substance; the court will look

to the legal effect of the identity of the parties even though they may be nominally different. *Rains v. State, supra* at 664. Thus, a party is in privity for res judicata purposes if represented by one with the authority to do so. *United States v. ITT Rayonier, Inc.,* 627 F.2d 996, 1003 (9th Cir. 1980). Also, a final judgment effective against the State may also be effective against its citizens because their common public rights as citizens were represented by the State in proceedings. *Tacoma v. Taxpayers,* 357 U.S. 320, 340–41, 2 L. Ed. 2d 1345, 78 S. Ct. 1209 (1958).

In the prior judgment, the Republican State Committee brought the action seeking a declaratory judgment on the validity of the 1981 legislative districts apportionment statute, RCW 44.07B, under the equal protection clause of the Fourteenth Amendment. The identity of subject matter in both the prior action and the present action is an alleged deprivation of constitutional rights.

The question remaining is whether the parties to this action are in sufficient privity with the parties in the prior judgment to bar their claim of a Fourteenth Amendment violation. We find they are. The parties in the prior judgment were the acknowledged heads of the major political parties in Washington state and several state officials (including Secretary of State, Lieutenant Governor, and Attorney General). Arguably, all citizens of Washington state were well represented in this agreed judgment by the parties with the authority to do so. Plaintiffs in the present action identify themselves as registered voters in one of the four districts at issue and as members of a "political party or group" against which the legislative redistricting act discriminates. We hold plaintiffs had their interests represented in the prior judgment with regard to their Fourteenth Amendment challenge.

■ Even if plaintiffs' action under the Fourteenth Amendment was not barred by res judicata, however, no federal equal protection rights would be violated. In *Reynolds v. Sims,* 377 U.S. 533, 568, 12 L. Ed. 2d 506, 84 S. Ct. 1362 (1964), the Court held "the Equal Protection Clause

requires that the seats in both houses of a bicameral state legislature must be apportioned on a population basis." The requirement of a state legislature was to "make an honest and good faith effort to construct districts . . . as nearly of equal population as is practicable." *Reynolds,* at 577. Recently, the Court held that a state's apportionment plan with a maximum population deviation under 10 percent falls into a category of minor deviations "insufficient to make out a prima facie case of invidious discrimination under the Fourteenth Amendment . . ." *Brown v. Thomson,* 462 U.S. 835, 842, 77 L. Ed. 2d 214, 103 S. Ct. 2690 (1983) (quoting *Gaffney v. Cummings,* 412 U.S. 735, 745, 37 L. Ed. 2d 298, 93 S. Ct. 2321 (1973)).

The districts in this state have an average of approximately 42,145 persons per state representative. The percentage deviation from this standard reveals only a 6.75 percent deviation (district 19–A having the largest percentage over this average and district 10 the smallest)—well within the United States Supreme Court's 10 percent standard. There is a statutory declaration of legislative intent that districts 19 and 39 were split "to provide better representation by protecting the community of interest in rural and urban areas in these districts." RCW 44.07B.009. The population deviation in the challenged redistricting is insufficient to raise a prima facie case under the Fourteenth Amendment.

## II

Plaintiffs next raise state constitutional issues which were not and could not be settled by the 1982 judgment of the United States District Court. Initially, they claim the splitting of districts 19 and 39 into single representative districts violates article 1, section 12 of the Washington Constitution. Plaintiffs argue the four state legislative districts at issue (19–A, 19–B, 39–A, and 39–B) do not contain a population nearly equal to the population of other similarly situated legislative districts and elect only one representative compared to two representatives in the other

districts. Thus, plaintiffs claim they do not enjoy the same privileges and immunities enjoyed by citizens and qualified voters in the other districts.

Article 1, section 12 provides:

> No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.

As part of our state constitution, we may interpret this provision under grounds both separate and independent from the federal constitution. *Seattle v. State*, 103 Wn.2d 663, 672, 694 P.2d 641 (1985). Our interpretation of the State's privileges and immunities clause, however, has followed the federal interpretation of the equal protection clause. *Seattle v. State, supra* at 672–73.

In *Story v. Anderson*, 93 Wn.2d 546, 549, 611 P.2d 764 (1980), we provided two requirements essential for establishment of valid state voting districts: (1) the districts must have "substantial equality of population" to insure the vote of any citizen is "approximately equal in weight to that of any other citizen in the State" (quoting *Reynolds v. Sims*, at 579); and (2) the districts must not be drawn to dilute the voting strength of any citizen (particularly of any racial or political groups). *Story*, at 549.

We held the weight of a citizen's vote cannot be made to depend on where the citizen lives. *Story*, at 550. We went on to state that the one person, one vote principle requires population equality in order to "'insure, as far as is practicable, that equal numbers of voters can vote for proportionately equal numbers of officials.'" *Story*, at 550 (quoting *Hadley v. Junior College Dist.*, 397 U.S. 50, 56, 25 L. Ed. 2d 45, 90 S. Ct. 791 (1970)).

RCW 44.07B insures that an equal number of voters can vote for an equal number of representatives. Statewide, the ratio of an elected representative to population is approximately 1/42,145. Comparing the population in each district statewide, the ratio figure between the largest district and the smallest district is 1.07/1. The percentage of deviation

from the average size district is only 6.75 percent. Furthermore, there is nothing in the stipulation before us which asserts the districts were drawn to dilute the voting strength of any citizen, including racial or political groups. The two requirements of *Story* are met.

Plaintiffs argue the weight of their vote is severely and unconstitutionally diluted when limited to electing only one representative. There is no authority to support this claim. The United States Supreme Court has not found that plural representation enhances the influence of its voters when compared to single member districts. *Whitcomb v. Chavis,* 403 U.S. 124, 29 L. Ed. 2d 363, 91 S. Ct. 1858 (1971).

> We are not ready, however, to agree that multi–member districts, wherever they exist, overrepresent their voters as compared with voters in single–member districts, even if the multi–member delegation tends to bloc voting. The theory that plural representation itself unduly enhances a district's power and the influence of its voters remains to be demonstrated in practice and in the day–to–day operation of the legislature. Neither the findings of the trial court nor the record before us sustains it, even where bloc voting is posited.

*Whitcomb,* at 147.

We find this reasoning persuasive. Statutes are presumed to be constitutional and these plaintiffs have the burden of proving its invalidity beyond a reasonable doubt. *Hontz v. State,* 105 Wn.2d 302, 306, 714 P.2d 1176 (1986). Plaintiffs have not succeeded in their burden.

## III

Finally, plaintiffs assert the constitutional standard in article 2, section 43(5), which provides each legislative district must contain a population as nearly equal as practicable to the population of any other district, invalidates the portions of RCW 44.07B establishing districts 19–A, 19–B, 39–A, and 39–B. Defendant argues article 2, section 43(5) is intended to apply only to redistricting plans drawn up by a redistricting commission beginning in 1991 (Const. art. 2, § 43(1)).

Const. art. 2, § 43(5) provides:

> Each district shall contain a population, excluding nonresident military personnel, as nearly equal as practicable to the population of any other district. To the extent reasonable, each district shall contain contiguous territory, shall be compact and convenient, and shall be separated from adjoining districts by natural geographic barriers, artificial barriers, or political subdivision boundaries. The commission's plan shall not provide for a number of legislative districts different than that established by the legislature. The commission's plan shall not be drawn purposely to favor or discriminate against any political party or group.

█ Article 2, section 43(11) now provides the only method by which our state can establish a redistricting plan. Article 2, section 43(5) applies, moreover, solely to redistricting plans drawn by the commission provided for in that section. Thus, section 43(5) is not applicable until the independent commission establishes a redistricting plan beginning in 1991. Const. art. 2, § 43(1). It does not apply to RCW 44.07B, which is the subject of this action. We specifically express no opinion as to whether the provisions of Const. art. 2, § 43(5) would render the redistricting legislation before us unconstitutional.

Any challenge to legislative redistricting prior to 1991 must be done under other appropriate constitutional provisions, if any are found to be applicable. Plaintiffs have raised no other constitutional provisions as issues in this case, and therefore, no other provisions may be a basis for our decision. RAP 12.1(a). Because none of the constitutional provisions argued by plaintiffs—U.S. Const. amend. 14, § 1; Const. art. 1, § 12; and Const. art. 2, § 43—invalidate RCW 44.07B, the action is dismissed.

BRACHTENBACH, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

DORE, J. (dissenting)—It is true that the United States Supreme Court has held that the existence of some plural and some single representative districts does not offend the

federal equal protection clause of the United States Constitution. *Whitcomb v. Chavis,* 403 U.S. 124, 29 L. Ed. 2d 363, 91 S. Ct. 1858 (1971). As long as the ratio of elected representatives to the population is equal among all the districts, as plaintiffs concede it is here, the voting district plan will pass federal constitutional muster. This, however, as the majority admits, is not enough to resolve this case. The districting must also meet our state constitution's heightened protections. While the majority and I both agree these additional state claims are not barred by an earlier federal court's approval of the 1981 redistricting plan, I, unlike the majority, believe our state constitution does not allow such blatantly dissimilar voting districts. I dissent from the majority opinion. I would hold RCW 44.07B.009 unconstitutional, because it changes the boundaries of two representative districts, each containing approximately 80,000 citizens, into four legislative districts, each containing only 40,000 citizens.

Const. art. 1, § 12, often referred to as the privileges and immunities clause, states:

> No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.

Our interpretation of the privileges and immunities clause has followed the federal interpretation of the equal protection clause. "The primary purpose of the equal protection clause is the protection of individuals' rights, including the right to vote." *Seattle v. State,* 103 Wn.2d 663, 668, 694 P.2d 641 (1985). Nevertheless, as a majority of this court held just 1 year ago, even if the federal equal protection clause did not require reversal of a voting plan, this does not mean it is acceptable under our state constitution. If our state constitution provides for additional protection beyond that found under the equal protection clause, then this court should provide for that additional protection. *Seattle v. State, supra* at 672–73. I believe article 1, section 19 and article 2, section 43(5) (amendment 74) provide for

such additional protection.

Const. art. 1, § 19 states:

*All Elections shall be free and equal,* and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage.

This court, when called to interpret this clause 2 years ago in *Foster v. Sunnyside Vly. Irrig. Dist.,* 102 Wn.2d 395, 687 P.2d 841 (1984), analyzed the history of this provision and the cases which have interpreted it. We held:

This history [of Const. art. 1, § 19] offers several principles applicable here. The right of all constitutionally qualified citizens to vote is fundamental to our representative form of government. In most instances any legislative act which qualifies this right must, under federal law, be based upon a compelling state interest and the state must demonstrate that no less restrictive measures are available to achieve this interest.

*Foster,* at 407–08. Thus, any justification for the four "single member representative districts" must meet this very high burden, because otherwise residents of these districts will have disproportionately fewer representatives in the Legislature.

I believe it is clear that the State cannot meet this burden. In *Story v. Anderson,* 93 Wn.2d 546, 549, 611 P.2d 764 (1980) we invalidated the disproportionate voting districts for county commissioners in Island County. We held that "district lines must not be drawn in such a way as to invidiously dilute the voting strength of a particular . . . political element of the voting population." *Story,* at 549. It is obvious that these single–member representative districts do dilute the voting strength of the residents involved. Rather than being able to elect two representatives, as in all other districts in this state, the residents of these districts can only elect one. Thus, only one representative is accountable to residents of these districts, which is especially relevant in matters of local concern.

Furthermore, the plain language of Const. art. 1, § 19 requires equality in voting. Equality is not merely mea-

sured by mathematical proportionality; equality requires uniformity in district population. This concept is further borne out by the recent amendment to the Washington State Constitution, transferring the power of redistricting to a commission. Const. art. 2, § 43(5) (amend. 74) mandates that in the future "[e]ach district shall contain a population . . . as nearly equal as practicable to the population of any other district." This amendment directs the newly created commission to follow the mandates of Const. art. 1, § 19. Voting districts must be equal.

The majority recognizes that these split districts would have to be combined when the commission submits a redistricting plan in 1991. This is not only mandated by Const. art. 2, § 43 (amend. 74), but also by Const. art. 1, § 19. We should not abdicate our responsibility to uphold these provisions of the constitution in the interim.

CONCLUSION

RCW 44.07B.009, which created these four single–member representative districts, is unconstitutional and is void and of no effect. Article 1, section 19 guarantees equal sized voting districts and therefore these four "single member representative districts" should be combined into two "two member representative districts."

UTTER, J., concurs with DORE, J.