103 P.3d 722 (2004)
153 Wash.2d 201
David T. McDONALD and Ronald Taro Suyematsu; Sanford Sidell; Brent Campbell; and Hillary Dendy, Petitioner-Electors, and
Washington State Democratic Central Committee, Petitioners,
v.
SECRETARY OF STATE Sam Reed; King County Records, Elections and Licensing Services Division and Dean Logan, Its Director; Franklin County Auditor; Pend Oreille County Auditor; and Pierce County Auditor as representatives of Washington State County Auditors and Canvassing Boards, Respondents, and
Dino Rossi, a Washington Citizen and Elector, Washington State Republican Party, an unincorporated association, Intervenor-Respondents.
No. 76321-6.
Supreme Court of Washington.
December 14, 2004.
David J. Burman, Beth A. Colgan, Kevin J. Hamilton, Ryan J. McBrayer, William C. Rava, and Charles C. Sipos (of Perkins Coie, L.L.P.), for petitioners.
Thomas F. Ahearne, Marco J. Magnano, Jr. Jefferey A. Richard, and Hugh D. Spitzer (of Foster Pepper & Shefelman, P.L.L.C.); Norm Maleng, Prosecuting Attorney for King County, and Janine E. Joly and Thomas W. Kuffel, Deputies; Steven M. Lowe, Prosecuting Attorney for Franklin County, and Ryan E. Verhulp, Deputy: Thomas A. Metzger, Prosecuting Attorney for Pend Oreille County; and Gerald A. Horne, Prosecuting Attorney for Pierce County, and Daniel R. Hamilton, Deputy, for respondents.
E. Mark Braden (of Baker & Hostetler) and Harry J.F. Korrell III and Robert J. *723 Maguire (of Davis Wright Tremaine, L.L.P.), for Intervenor-Respondents.
ALEXANDER, C.J.
By a petition invoking this court's mandamus jurisdiction and a statute entitled "Prevention and correction of election frauds and errors," RCW 29A.68.011, various electors and the Washington State Democratic Central Committee seek an order directing Secretary of State Sam Reed to promulgate "uniform standards" for the manual recount now taking place in the Washington State election for Governor. Their Motion and Brief in Support of Emergency Partial Relief specifies that three such sets of standards are being sought:
(1) standards that ensure that all ballots rejected in previous counts are fully canvassed so that the hand recount produces as complete and accurate a tabulation as possible; (2) standards for evaluating previously-rejected signatures according to the more liberal standards applied in most counties; and (3) standards that allow party representatives to meaningfully witness the hand recount, by observing all actual ballots being counted.
Petitioners thus argue that, contrary to current practice, in a manual recount election workers and canvassing boards must consider anew all ballots previously left uncounted, in keeping with their statutory duty to count all votes cast or each ballot cast, though their argument mainly focuses on rejections made on the basis that absentee and provisional ballot signatures do not match with signatures on file. They seem to suggest that this is necessary in part because King County improperly refused to permit voters to protest the decision not to count their ballots on November 17, 2004, the date the election results were certified. Petitioners further suggest that, contrary to the election statutes, including a statute that requires the Secretary to promulgate uniform election rules, the various counties now employ disparate tests and procedures for comparing signatures, with King County having a greater rejection rate than other counties that is statistically significant. And they suggest that the procedures in place for witnessing the recount are contrary to law, and that such witnesses must be given "a meaningful opportunity to be heard before erroneous government action finally disenfranchises a voter."
This court is mindful that it is the policy of the State of Washington "to encourage every eligible person to register to vote and to participate fully in all elections." RCW 29A.04.205. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." Wesberry v. Sanders, 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964). Nonetheless, we must reject petitioners' arguments.
In this context, a "ballot" is a physical or electronic record of the choices of an individual voter, or the physical document on which the voter's choices are to be recorded. RCW 29A.04.008(1)(c),(d)." `Recount' means the process of retabulating ballots and producing amended election returns...." RCW 29A.04.139 (emphasis added). The procedure for recounts is set forth in RCW 29A.64.041, and starts with the county canvassing board opening "the sealed containers containing the ballots to be recounted." See RCW 29A.60.110. Thus, under Washington's statutory scheme, ballots are to be "retabulated" only if they have been previously counted or tallied, subject to the provisions of RCW 29A.60.210.
It follows that this court cannot order the Secretary to establish standards for the recanvassing of ballots previously rejected in this election. And petitioners' call for uniform signature-checking standards (seemingly beyond the statutory requirement that the signature on an absentee ballot be the same as the signature in voter registration files) is beyond the relief that can be afforded in this action.[1] Petitioners suggest in their reply *724 brief that a claimed disparity in signature-checking standards implicates equal protection concerns under the privileges and immunities clause of our state constitution, CONST. art. I, § 19, but they claim no discriminatory intent. We are mindful that King County rejected a higher percentage of signatures than did other counties, but the record before us does not establish the reason for this disparity, and it could be for factors other than the standard employed.[2] We do not take petitioners' argument to suggest that a claimed disparity in rejection rates of voter signatures triggers some independent right, constitutional or otherwise, to a recanvassing of rejected ballots under a newly developed standard, nor does such an argument come to mind.
Petitioners also seem to suggest that recanvassing of rejected ballots is necessary because the methods employed by King County to allow voters to rehabilitate rejected absentee and provisional ballots run afoul of Washington's statutory and regulatory scheme. But we find no support for this notion. We note that the county gave absentee voters who failed to sign their ballot affidavits until 4:30 p.m. on November 16, 2004, the day before certification, to sign and return the affidavits, in accordance with WAC 434-240-235. And although this regulation does not require as much, the county likewise permitted absentee voters with problem signatures until 4:30 p.m. on November 16 to provide an updated signature. The county's procedure for handling signature problems with respect to provisional ballots, which also specified a deadline of 4:30 p.m. on November 16, appears to comport with pertinent regulations and federal law, and petitioners do not persuasively suggest otherwise. Although, as petitioners point out, RCW 29A.60.190(1) provides that the election results should include absentee ballots postmarked on or before the date of the election and received on or before the date of certification, this statute does not address how ballots rejected for missing or invalid signatures are to be handled.
As for petitioners' request that we order the Secretary to promulgate "standards that allow party representatives to meaningfully witness the hand recount," we are not convinced that such standards are presently lacking. RCW 29A.64.041 provides that the recount may be observed by persons representing the candidates, that these witnesses may make no record of the names, addresses, or information on the ballots, poll books, or applications for absentee ballots unless authorized by the superior court, and that the Secretary or county auditor may limit the number of observers to not less than two on each side if, in his or her opinion, a greater number would cause undue delay or disruption of the recount process. Petitioners provide no support for their suggestion that witnesses or observers are participants who have a right to be heard and influence this manual recount process.
For the foregoing reasons, we reject petitioners' arguments and deny their petition for mandamus and request for relief under RCW 29A.68.011.
JOHNSON, MADSEN, IRELAND, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.
NOTES
[1] RCW 29A.40.110(3) requires that the signature on an absentee ballot return envelope be "the same" as the signature in the voter registration files, as determined by the canvassing board or its designated representative, whereas WAC 434-253-047 requires a signature for a provisional ballot that "matches a voter registration record."
[2] We note in passing that the declaration of Dean C. Logan, Director of King County Records, Elections and Licensing Division, says that King County, like many other counties, looks for three points of similarity between the signatures on absentee and provisional ballot envelopes and the signatures on file. If staff finds less than three points of similarity, a supervisor looks at the signatures using the same three-point system. "If the supervisor also believes there is a question as to the validity of the signature, it is referred to the canvassing board for a determination." Petitioners have submitted the declaration of Joshua C. Jungman, who says that he and other Democratic staff members contacted county auditors to investigate the methods and procedures used to compare and verify signatures. Several auditor offices reported using the same three point method, with canvassing boards having the final say. Mr. Jungman suggests that in King County the decision "doesn't go to the canvassing board," but does not say who provided this information. Significantly, petitioners do not suggest that any particular method of signature verification is faulty, or what uniform method should be mandated by the Secretary.