[Nos. 76480-8; 76541-3; 76500-6; 76479-4.     En Banc.]

Considered March 9, 2006.     Decided March 9, 2006.

*In the Matter of the Election Contest Filed by* ARTHUR CODAY, JR., *Petitioner.*

*In the Matter of the Election Contest Filed by* MICHAEL J. GOODALL, *Petitioner.*

*In the Matter of the Election Contest Filed by* SUZANNE D. KARR, *Petitioner.*

*In the Matter of the Election Contest Filed by* DANIEL P. STEVENS, *Petitioner.*

*Arthur Coday, Jr., Michael J. Goodall, Suzanne D. Karr,* and *Daniel P. Stevens,* pro se.

*Thomas F. Ahearne* (of *Foster Pepper, P.L.L.C.*); and *Robert M. McKenna, Attorney General, Maureen A. Hart,*

*Senior Assistant,* and *Jeffrey T. Even, Assistant,* for the Secretary of State.

*Kevin J. Hamilton, David J. Burman, Kathleen M. O'Sullivan,* and *William C. Rava* (of *Perkins Coie, L.L.P.*), for the Washington State Democratic Central Committee.

¶1 ALEXANDER, C.J. — Four election contests challenging the results of the 2004 governor's election were filed in this court by individual electors. These contestants rely on various grounds to challenge the results of the election. We conclude that three of these contests, those filed by Arthur Coday, Jr., Michael J. Goodall, and Daniel P. Stevens, fail to state a cognizable claim under the election contest statute. The fourth of these contests, that filed by Suzanne D. Karr, is identical to *Borders v. King County,* No. 05-2-00027-3 (Chelan County Super. Ct., Wash. June 24, 2005), which was decided in Chelan County Superior Court and is, therefore, barred under the doctrine of res judicata. We, therefore, dismiss all four contests.

I

¶2 The events surrounding the 2004 race for governor in Washington State are by now well known. Nevertheless, a brief summary of these events is appropriate. The general election was held on November 2, 2004. Vying for the governor's office were Democrat Christine Gregoire, Republican Dino Rossi, and Libertarian Ruth Bennett.

¶3 The results of the initial count of ballots, certified November 17, indicated that Rossi had received 261 more votes than Gregoire. *See* Court's Oral Decision, *Borders v. King County,* No. 05-2-00027-3 (*Borders* Oral Decision) at 4. Due to the narrow margin of votes separating the candi-

dates, a mandatory recount was automatically triggered. A machine recount was ordered by the secretary of state on November 17 and commenced shortly thereafter. The results of the machine recount were reported November 30 and indicated that Rossi had received 42 more votes than Gregoire. On that date the secretary of state certified that result.

¶4 On December 3, a representative of the Democratic Party applied for a statewide manual recount, *id.* at 5, and, as required by statute,[1] deposited $730,000 to cover the costs thereof should the outcome of the election not change as a result of the recount. On December 6, the secretary of state ordered a statewide manual recount. The manual recount began on December 8.

¶5 Also on December 3, the Democratic Party filed an original action in this court. The Democrats sought to have thousands of ballots, which were rejected in the initial count because of certain defects, "recanvassed" during the hand recount. We rejected the Democrats' request to order the recanvass of previously rejected ballots, reasoning that Washington law requires a recount of only those ballots actually tabulated in the initial count. *See McDonald v. Reed*, 153 Wn.2d 201, 103 P.3d 722 (2004).

¶6 Meanwhile, 573 previously uncounted ballots were discovered in King County by election workers (eventually, another 162 such ballots were discovered, for a total of 735). The King County Canvassing Board moved to count these ballots. However, before they could be counted, the Republican Party filed suit in Pierce County Superior Court, seeking to block King County elections officials from including the newly discovered ballots in the hand recount. A Pierce County Superior Court judge sided with the Republicans and ordered King County elections officials to omit the newly discovered ballots from the hand recount. The Democratic Central Committee, which was allowed to intervene in the Pierce County suit, appealed that order to

---

[1] *See* former RCW 29A.64.030 (2003).

this court. We held that a county canvassing board has discretion to recanvass ballots in certain circumstances and thus reversed the superior court's order and allowed the newly discovered ballots to be canvassed and included in the total tally of votes. *See Wash. State Republican Party v. King County*, 153 Wn.2d 220, 224, 103 P.3d 725 (2004).

¶7 The hand recount was completed on December 23. With the newly discovered ballots included in the final tally, Gregoire received 1,373,361 votes, Rossi received 1,373,232 votes, and Bennett received 63,456 votes, giving Gregoire a 129-vote victory over Rossi. The secretary of state transmitted the election results to the legislature on December 30. The legislature certified Gregoire as the winner on January 11, 2005, and she was sworn in as governor on January 12.

¶8 Following the certification of Gregoire as the winner of the election, seven electors, some of whom represented the Republican Party and the Rossi campaign, filed an election contest in Chelan County Superior Court. In it, the contestants claimed that hundreds of "illegal votes"—including votes cast by felons and votes cast on behalf of deceased electors—made the difference in the election. *Borders* Oral Decision at 6. The contestants further alleged that "errors, omissions, mistakes, neglect and other wrongful acts" by county election officials affected the outcome of the election and necessitated its nullification. *Id.* The Democratic Central Committee intervened and defended the result of the election. After months of pretrial proceedings, including voluminous discovery, a two-week trial was held in Chelan County Superior Court in which dozens of fact witnesses, several expert witnesses, and hundreds of exhibits were presented. On June 6, the Chelan County Superior Court judge presiding over the case dismissed the contest. After weighing the evidence, he concluded that the contestants had failed to prove that grounds for nullification of the election existed. *See generally Borders* Oral Decision. Specifically, he ruled that, while the contestants had proved that errors and omissions by county election officials had occurred and that illegal votes were cast, they

had not proved that the outcome of the governor's election was changed as a result.

¶9 On June 7, Rossi and the Republicans decided not to appeal that ruling. Several weeks after the *Borders* case was dismissed, the $730,000 deposited by the Democratic Party when it requested a second recount was returned to the party together with two percent interest on the $730,000.

¶10 The election contests of Stevens, Coday, Karr, and Goodall were filed directly in this court on January 3, 5, 10, and 19, 2005 respectively. The secretary of state and the Democratic Central Committee, though not named parties in these contests, requested the opportunity to comment on how they should be addressed. We granted these requests and received comments from both parties on July 12. In their comments, the secretary of state and the Democratic Central Committee both argued that these contests either failed to state a cognizable claim under the election contest statute or were identical to the *Borders* claim and, therefore, barred by res judicata. Both the secretary of state and the Democratic Central Committee urged this court to dismiss all four contests.

## II. Summary of Contests

### A. Coday Contest, No. 76480-8

¶11 Arthur Coday, Jr., a registered voter in King County, argues that the State violated the Washington Constitution in conducting the 2004 gubernatorial election. Specifically, he contends that article I, section 19 of the Washington Constitution was violated. Article I, section 19, entitled "Freedom of Elections," provides that "[a]ll Elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." He claims that the State ran afoul of this provision in five particular ways.

¶12 Coday first argues that article I, section 19 was violated because Gregoire and the Democratic Party were

allowed to "purchase the right to a hand recount." Coday Br. at 5 ("the Democratic . . . Party made payment of money to the State in order to purchase the right to recount a State-certified election"). The election was literally not "free" as required by article I, section 19, Coday argues, because the recount, and therefore the election, could be "bought or sold." *Id.*

¶13 Coday next argues that the election was not "equal" because all voters did not have the "unconditional right to call for a recount." *Id.* at 7. He asserts that the opportunity to call for a recount must be unconditional, i.e., unlimited. Because effectively only one party may call for a recount under Washington's recount statute, the opportunity for other parties to seek a recount is necessarily limited. Furthermore, Coday argues, the person who actually does get to request a recount is afforded a "special favor." *Id.*

¶14 Coday's third argument is that the State improperly counted additional ballots not tabulated in the initial count. He observes that "in the three counts of ballots in the election process for the Governor, there has been one count each of three different sets of ballots, and not a single 'recount' of the original set of approved ballots." *Id.* According to Coday, the failure to count only one set of ballots "violates the principle of 'equal [sic].' " *Id.* at 8.

¶15 Next, Coday claims that "Washington's recount laws are statistically flawed." *Id.* at 10. He argues that the proper statistical method for determining the winner of an election during a recount is to average the results of each of the counts. Because Washington's recount method considers only the results of the final count, it is contrary to "[m]odern statistical theory." *Id.*

¶16 Coday's final argument is focused on the practice of enhancing ballots. He asserts that the practice of enhancing ballots is inherently illegal, claiming that "[a]n 'enhanced' ballot is merely a pseudonym for a ballot tainted by tampering." *Id.* at 11.

¶17 Coday asks this court to require the State to return the money provided to it by the Democratic Party in

advance of the recount. He also asks us to "[s]trike down any law that provides private parties with the unconditional right to call for a recount," require the use of a single set of ballots for each of the recounts, require the State to average the results of each of the recounts, reject all enhanced ballots, and inaugurate Dino Rossi as governor of Washington. *Id.* at 12.

## B. Goodall Contest, No. 76541-3

¶18 Michael J. Goodall, a registered voter in King County, filed a "Citizens Complaint" contesting the election of Christine Gregoire as governor. He alleges that Gregoire is unfit to be governor because she impermissibly offered Washington voters a reward in exchange for their votes.

¶19 Goodall's son, C.N., has severe autism and was placed in foster care because neither Goodall nor C.N.'s mother could properly care for him. Goodall argues that while in foster care, his son was abused and maltreated. He contends that then-Attorney General Gregoire was aware of this abuse but conspired with other individuals in the Office of the Attorney General and with other state agencies and the King County Superior Court to cover up this abuse in order to shield the State from a large judgment. Goodall maintains that Gregoire was motivated to prevent a large judgment against the State because it would be politically embarrassing for the Office of the Attorney General and would hurt her chances of being elected governor.

¶20 Goodall contends this alleged "cover-up" falls within RCW 29A.68.020(4) and is a basis for invalidating the results of the election. RCW 29A.68.020(4) provides that any registered voter may contest the right of

any person declared elected to an office to be issued a certificate of election . . .

. . . .

(4) Because the person whose right is being contested gave a bribe or reward to a voter or to an inspector or judge of election for the purpose of procuring the election, or offered to do so.

¶21 Goodall asks this court to "not allow Christine Gregoire to become Governor" because her alleged deliberate acts of "covering up [acts of child] abuse and maltreatment" by state foster homes violated RCW 29A.68.020(4). Citizens Compl. at 7.

## C. Karr Contest, No. 76500-6

¶22 Suzanne D. Karr, a registered voter in Snohomish County, filed an "Affidavit of Error or Omission" in which she contests the results of the 2004 gubernatorial election. Karr charges that the election is invalid because of misconduct on the part of King County election officials and illegal votes counted in the governor's race.

¶23 With respect to her claim of misconduct on the part of election officials, Karr claims that (1) a number of provisional ballots in King County were counted without having first been deemed valid; (2) election officials impermissibly released to the Democratic and Republican parties names of provisional voters whose signatures on file did not match their signatures on their ballots and allowed the parties to submit signature verification affidavits on behalf of voters; and (3) election officials failed to obtain or to adequately verify voter signatures on some ballots, resulting in a greater number of votes being cast than voters appearing on the list of electors having voted.

¶24 Karr claims that a number of illegal votes were counted because some voters cast more than one vote or were disqualified under article VI, section 3 of the Washington Constitution[2] because they were felons or had been declared incompetent. Karr contests the right of Gregoire to be elected but asks for no particular relief.

## D. Stevens Contest, No. 76479-4

¶25 Daniel P. Stevens, a registered voter in King County, claims that the results of the election are invalid because

---

[2] Article VI, section 3 provides: "All persons convicted of infamous crime unless restored to their civil rights and all persons while they are judicially declared mentally incompetent are excluded from the elective franchise."

"[t]he delta value of votes given to both candidates is exponentially within the tally's margin of error, to the point that error must be assumed as a certainty, as given by three separate counts resulting in three different outcomes." Stevens' Br. at 1.

¶26 Stevens requests that this court "[n]ullify the election" and "[o]rder a revote." *Id.*

## III

¶27 Under the election contest statute, chapter 29A.68 RCW, an election may be contested based only on a limited number of causes, which are enumerated therein. *See* RCW 29A.68.011, .020; *Foulkes v. Hays*, 85 Wn.2d 629, 632-35, 537 P.2d 777 (1975). RCW 29A.68.020 provides that the causes on which an election may be contested are:

(1) [Because of] misconduct on the part of any member of any precinct election board involved therein;

(2) Because the person whose right is being contested was not at the time the person was declared elected eligible to that office;

(3) Because the person whose right is being contested was previous to the election convicted of a felony by a court of competent jurisdiction, the conviction not having been reversed nor the person's civil rights restored after the conviction;

(4) Because the person whose right is being contested gave a bribe or reward to a voter or to an inspector or judge of election for the purpose of procuring the election, or offered to do so;

(5) On account of illegal votes.

¶28 An election may be challenged under causes enumerated in RCW 29A.68.011 as well. *See Foulkes*, 85 Wn.2d at 632-35. RCW 29A.68.011 provides in pertinent part:

Any justice of the supreme court, judge of the court of appeals, or judge of the superior court in the proper county shall, by order, require any person charged with error, wrongful act, or neglect to forthwith correct the error, desist from the wrongful act, or perform the duty and to do as the court orders or to show cause forthwith why the error should not be corrected, the

wrongful act desisted from, or the duty or order not performed, whenever it is made to appear to such justice or judge by affidavit of an elector that:

. . . .

(4) A wrongful act . . . has been performed or is about to be performed by any election officer; or

(5) Any neglect of duty on the part of an election officer . . . has occurred or is about to occur; or

(6) An error or omission has occurred or is about to occur in the issuance of a certificate of election.

¶29 In *Foulkes,* this court agreed that a challenger could maintain a challenge to an election under the equivalent to current RCW 29A.68.011 even if grounds to contest the election under the equivalent to current RCW 29A.68.020 did not exist. *Foulkes,* 85 Wn.2d at 632-35. Thus, where a challenger alleges that an election official has engaged in a wrongful act or has neglected a duty, he or she may challenge the results of the election under RCW 29A.68.011, even if none of the specific causes enumerated in RCW 29A.68.020 are implicated.

¶30 RCW 29A.68.030 provides that "no statement of contest may be dismissed for want of form if the particular causes of contest are alleged with *sufficient certainty.*" (Emphasis added.) Thus, an election contest which fails to allege "the particular causes of contest . . . with sufficient certainty" may be dismissed. RCW 29A.68.030.

¶31 "Sufficient certainty" is not defined in the statute, nor have we had occasion to define that particular term. However, in previous election contest cases, this court has utilized generally applicable, liberal pleading rules. *See Dumas v. Gagner,* 137 Wn.2d 268, 282, 971 P.2d 17 (1999). In *Dumas,* a case involving a contested port commissioner election, the contestant failed to cite specific statutory election contest provisions in his election contest petition. Nevertheless, we allowed the contest to proceed. In so doing, we observed that

[a]lthough Respondent's petition did not cite specific subsections of the [election contest] statute, *sufficient facts and law were stated concerning the nature of the claim to bring the petition under the statute.* Although the petition is not a model of pleading, it is nevertheless adequate so long as it is *sufficient to satisfy necessary legal requirements.*

*Id.* (emphasis added).

¶32 Although we did not indicate what the "necessary legal requirements" are in an election contest petition or affidavit, we referred to the standard articulated in *Lightner v. Balow,* 59 Wn.2d 856, 370 P.2d 982 (1962). In *Lightner,* this court recognized that " ' "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' " *Lightner,* 59 Wn.2d at 858 (quoting *Sherwood v. Moxee Sch. Dist. No. 90,* 58 Wn.2d 351, 353, 363 P.2d 138 (1961) (quoting *Conley v. Gibson,* 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957))).

¶33 This standard is similar to that applicable to a motion to dismiss pursuant to Civil Rule (CR) 12(b)(6). Dismissal of a claim pursuant to CR 12(b)(6) is appropriate "only if 'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.' " *Orwick v. City of Seattle,* 103 Wn.2d 249, 254, 692 P.2d 793 (1984) (quoting *Corrigal v. Ball & Dodd Funeral Home, Inc.,* 89 Wn.2d 959, 961, 577 P.2d 580 (1978)).

¶34 Each of these four contests was timely filed. Furthermore, while none of the contests is a "model of pleading," *Dumas,* 137 Wn.2d at 282, we will not dismiss election contests "for want of form." RCW 29A.68.030. Thus, we must determine whether each of these contests states a claim under the election contest statute with "sufficient certainty." We will consider each contest seriatim.

## A. Coday Contest

¶35 Coday's first two claims, that the election was not "free" as required by the constitution because Gregoire was allowed to "purchase the right to a hand recount" and that the election was not "equal" as required by the constitution because not all citizens had an equal, unqualified right to contest the election, are not cognizable under the election contest statute. The procedure for commencing a recount and the requirement that a deposit be made to cover the costs of a recount should the result of the election not be changed are established by statute. *See* RCW 29A-.64.011, .030, .081. A party requesting a recount does not purchase the right to a recount but makes a deposit, which is refunded if the result of the election is reversed as a result of the recount. *See* RCW 29A.64.030. Furthermore, any elector, along with four other electors, has the right to request a recount. RCW 29A.64.011. Neither of the provisions Coday challenges violates the "free and equal" requirement of article I, section 19 of the constitution.

¶36 The third claim, that the State violated its own laws by counting different sets of ballots in each recount, is meritless in light of our decision in *Washington State Republican Party*, which addressed this very issue and approved the practice of counting certain ballots in a recount that had not been previously counted, under certain circumstances. *See Wash. State Republican Party*, 153 Wn.2d at 224. Coday's fourth issue, that the State's ballot counting procedures were statistically flawed, is not addressable under any provision of the election contest statute. The recounts were properly conducted pursuant to the methodology established in statute. The statute governing recounts, chapter 29A.64 RCW, neither provides for nor allows the statistical averaging of recount results. Nothing about this recount methodology violates article I, section 19's requirement of "free and equal" elections.

¶37 The fifth issue raised by Coday is similarly without merit. Coday claims that the practice of ballot enhancement violates the constitutional requirement of an

"equal" election. The practice of ballot enhancement does not actually "enhance" a ballot but instead allows a vote recorded on a ballot to be made readable by electronic voting equipment consistently with the voter's intent. WAC 434-261-005. The secretary of state has authorized the practice of ballot enhancement (*see* WAC 434-261-005, -070, -080, and -085) and has dictated procedures to ensure that ballot enhancement occurs in a fair and transparent manner. *See* WAC 434-261-070(3)(c), -080. This process does not in any way run afoul of our constitution's requirement for an "equal" election.

B. Goodall Contest

¶38 Goodall bases his contest specifically on RCW 29A.68.020(4), claiming that Gregoire gave bribes or rewards to voters in exchange for their votes. While Goodall's allegations, if true, might give rise to *some* legal claim, they are not cognizable under the election contest statute. Actions taken to avoid large judgments against the State do not constitute a "bribe or reward to a voter" given "for the purpose of procuring the election." RCW 29A-.68.020(4). Goodall's contest, therefore, fails to satisfy the necessary legal requirements.

C. Stevens Contest

¶39 The Stevens contest is based on his assertion that "error must be assumed as a certainty" because "[t]he delta value of votes given to both candidates is exponentially within the tally's margin of error." Stevens' Br. at 1. While this assertion may well be true, it does not entitle him to any relief under chapter 29A.68 RCW. He fails to point to any wrongful act or neglect of duty on the part of any election official under RCW 29A.68.011. Furthermore, the fact that the number of votes separating the candidates was within the margin of error does not constitute "error" in the issuance of a certification of election of the type contemplated by the statute. Finally, Stevens' claims do not fall within any of the causes specified in RCW 29A.68.020. It therefore fails to satisfy necessary legal requirements.

## D. Karr Contest

■■■ ¶40 While want of form and arguably deficient in evidence, the Karr contest raises issues that are clearly addressable under RCW 29A.68.020. As noted above, she claims that there was misconduct on the part of election officials and that illegal votes were cast in favor of Gregoire. She supports these broad claims by referencing specific acts and omissions.

¶41 The first cause she puts forth, "misconduct on the part of election officers and members of the precinct election board involved [in the conduct of the election]," Karr Aff. at 1, states a claim under RCW 29A.68.020(1) (allowing a registered voter to contest an election based on "misconduct on the part of any member of any precinct election board involved [in conduct of the election]"). Her second cause, illegal votes, falls squarely within RCW 29A.68.020(5), which allows a voter to contest an election based on "illegal votes."

¶42 Karr's contest is "sufficient to satisfy necessary legal requirements" in that, assuming the allegations raised in her affidavit are true, she would likely be entitled to relief. *Dumas*, 137 Wn.2d at 282. Karr therefore presents a cognizable claim under chapter 29A.68 RCW.

## IV

■■■■ ¶43 While the Karr contest is sufficient to state a claim under chapter 29A.68 RCW, because it is identical to the *Borders v. King County* contest,[3] it is barred by the doctrine of res judicata. Under that doctrine, a prior judg-

---

[3] Under ER 201, Washington courts generally do not take judicial notice of court records from a different case. However, this court has held that "where the state of the pleadings is such that the plea of *res judicata* cannot be interposed, and there is no opportunity to raise the point on the introduction of evidence, the court will take judicial notice of the prior decision adjudicating the issue." *Reagh v. Hamilton*, 194 Wash. 449, 455, 78 P.2d 555 (1938) (citing *Wilkes v. Davies*, 8 Wash. 112, 121, 35 P. 611 (1894) ("It is true that the plea of *res adjudicata* was not presented by the pleadings, nor was it offered in proof under the general issue, which are the two ordinary ways of bringing this question to the notice of the court. But this case falls within the rule laid down by many courts where no opportunity to plead the former adjudication is presented.")). In this case, the

ment will bar litigation of a subsequent claim if the prior judgment has "a concurrence of identity with [the] subsequent action in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made." *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 763, 887 P.2d 898 (1995).

¶44 Karr's contest is identical in subject matter (errors, omissions, and misconduct committed by elections officials in the conduct of the 2004 gubernatorial election and illegal votes cast by individuals constitutionally disqualified from voting) and cause of action (an election contest under chapter 29A.68 RCW). Furthermore, Karr is identical to the parties in the *Borders* case. Generally, the rules that allow for concurrence of identity between parties are quite strict. However, where "nominally different parties" pursue causes of action as voters on behalf of the body politic generally, such parties have been found to "have sufficiently identical interests to satisfy the 'identity of parties' inquiry" because they possess "the same legal interests as all citizens of the state." *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 261, 961 P.2d 343 (1998); *accord Snyder v. Munro*, 106 Wn.2d 380, 384, 721 P.2d 962 (1986) (holding that "all citizens of Washington state were well represented in" a prior suit brought by the leaders of the state Democratic and Republican organizations and state government officials, and that therefore res judicata barred registered voters from raising the same claim in a subsequent action).

¶45 While Karr was not a participant in the *Borders* case, she is acting in the same capacity, and has the same legal interest, as the participants in that case. Like the

petitioner, Karr, did not name opposing parties, and therefore there was no party to plead and prove res judicata as a defense, although the secretary of state and the Democratic Central Committee both argued in comments submitted to this court that res judicata should bar Karr's claims. Furthermore, Karr herself urged this court to "utilize the evidence from the *Borders* case as a foundation for ruling on this affidavit." Resp. by Pet'r to Comments Filed by the Sec'y of State and the Democratic Cent. Comm. at 5. She offered that she "does not have the legal resources or any desire to waste this Court's time by reintroducing relevant evidence and testimony already covered in the *Borders* case." *Id.* Under these unusual circumstances, we find it appropriate to take judicial notice of the oral decision in *Borders*.

502

contestants in the *Borders* case, Karr is an elector, pursing an election contest qua elector pursuant to chapter 29A.68 RCW. Furthermore, her interest is identical to that of the *Borders* contestants and of all citizens of the state: ensuring a fair, just, and accurate election. She is, therefore, an identical party to the *Borders* contestants for res judicata purposes. Because there is a concurrence of identity between Karr's contest and the *Borders* contest, her contest is barred by res judicata.[4]

## V. Conclusion

¶46 The parties in the contests of Coday, Goodall, Karr, and Stevens have not raised the issue of this court's jurisdiction to decide an election contest for governor. Article III, section 4 of the Washington Constitution says that election contests for statewide executives, including the governor, "shall be decided by the legislature in such manner as shall be determined by law." We have assumed, without deciding, that chapter 29A.68 RCW confers jurisdiction on this court to decide the present election contests. We reserve the right to consider the question of whether the constitution gives the legislature exclusive jurisdiction over governor's election contests if it is properly raised at some future time.

¶47 In conclusion, the contests of Coday, Goodall, and Stevens do not state a cognizable claim under the election contest statute, chapter 29A.68 RCW. Karr's contest is

---

[4] We are reluctant to bar citizens from exercising the right, afforded them by statute, to contest an election. However, we are also wary of numerous election contests being conducted in multiple jurisdictions, which could result in conflicting verdicts, ongoing uncertainty in the outcome of elections, and the needless expenditure of judicial resources. Thus, in cases such as this one, where parties to one election contest adequately represent the electorate (i.e., have a significant stake in the outcome of the contest and invest significant resources in pursuing all viable grounds for the contest), we will invoke the doctrine of res judicata to bar substantially identical contests. However, we might well decline to apply res judicata to bar election contests where the contestants in an earlier case do not adequately represent the interests of the electorate generally.

identical to the *Borders* contest and is, therefore, barred by res judicata. We, therefore, dismiss all four contests.

C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

¶48 SANDERS, J. (dissenting) — The majority denies Suzanne D. Karr her day in court to litigate an election contest, asserting it is barred by res judicata. I strongly disagree. The mere fact that Ms. Karr and the unrelated litigants in the unappealed trial court proceeding of *Borders v. King County*[5] sought to contest the same election does not constitute a concurrence of cause of action or of persons or parties for the purposes of the doctrine. This ruling strikes at the heart of the fundamental right of every person to access the courts. I dissent.

## I. ANALYSIS

¶49 Under well-established precedent, res judicata bars a subsequent action only if a prior judgment has concurrence of identity in "(1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made" with the subsequent action. *Rains v. State*, 100 Wn.2d 660, 663, 674 P.2d 165 (1983). Where the issues or the parties are not the same, the doctrine simply does not apply. *Snyder v. Munro*, 106 Wn.2d 380, 383, 721 P.2d 962 (1986) (citing *Int'l Bhd. of Pulp, Sulphite & Paper Mill Workers v. Delaney*, 73 Wn.2d 956, 960, 442 P.2d 250 (1968)). As we have explained:

> "Privity does not arise from the mere fact that persons as litigants are interested in the same question or in proving or disproving the same state of facts. Privity within the meaning of the doctrine of res judicata is privity as it exists in relation to the subject matter of the litigation, and the rule is construed strictly to mean parties claiming under the same title. It

---

[5] *Borders v. King County*, No. 05-2-00027-3 (Chelan County Super. Ct., Wash. June 24, 2005).

denotes mutual or successive relationship to the same right or property."

*Owens v. Kuro*, 56 Wn.2d 564, 568, 354 P.2d 696 (1960) (quoting *Sodak Distrib. Co. v. Wayne*, 77 S.D. 496, 502, 93 N.W.2d 791, 795 (1958)).

¶50 Holding Ms. Karr and the litigants in *Borders* are identical parties for res judicata purposes, the majority purports to rely on *Snyder* and *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 961 P.2d 343 (1998). Majority at 501. Not so.

¶51 The plaintiffs in *Snyder* identified themselves as "members of a 'political party or group'" discriminated against by the legislative redistricting at issue in that case. *Snyder*, 106 Wn.2d at 384. We found sufficient privity with parties in the prior judgment existed because "[t]he parties in the prior judgment were the acknowledged heads of the major political parties in Washington." *Id.* However, no such relationship exists between Ms. Karr and the *Borders* litigants. Ms. Karr did not participate in the Wenatchee trial. The record is silent on her political affiliation, if any. Her affidavit of error or omission was filed on January 10, 2005, a mere three days after the *Borders* contest was filed and some five months before the ruling in that case. In short, nothing in the record suggests a "'mutual or successive relationship'" between Ms. Karr and the parties in *Borders*. *Owens*, 56 Wn.2d at 568 (quoting *Wayne*, 77 S.D. at 502).

¶52 *Pearsall-Stipek* is similarly inapposite[6] because, unlike the petitioner in that case, Ms. Karr has not confined her affidavit to merely "present[ing] the same charges based on the same facts." *Pearsall-Stipek*, 136 Wn.2d at 259. Furthermore, whereas the initial litigation in *Pearsall-Stipek* had exhausted all available appeals, the petitioners in *Borders* elected not to appeal an adverse ruling on several key legal issues. Absent some proven close connec-

---

[6] I found *Pearsall-Stipek*'s dicta on res judicata unconvincing as explained in my concurrence, a concurrence ironically joined by Chief Justice Alexander.

tion between Ms. Karr and the contestants in *Borders*, the fact Ms. Karr is challenging the result of the same election, standing alone, is insufficient to establish the concurrence of the parties' identity. *See Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 768, 887 P.2d 898 (1995) (holding "[p]rivity is established in cases where the person exercises actual control or substantially participates in the litigation").

¶53 The majority also holds Ms. Karr's and the *Borders'* election contests arise under the same cause of action. Majority at 501. I disagree. Ms. Karr has stated a claim under both RCW 29A.68.020(1), alleging "misconduct on the part of any member of any precinct election board involved [in the election]," and RCW 29A.68.020(5), alleging Governor Gregoire was issued a certificate of election "[o]n account of illegal votes."[7] By contrast, the *Borders* petitioners alleged violations of RCW 29A.68.020(5) and RCW 29A.68.011(4) and (5), but not RCW 29A.68.020(1). *See* Court's Oral Decision, Verbatim Report of Proceedings at 6 (*Borders v. King County*, No. 05-2-00027-3 (Chelan County Super. Ct., Wash. June 6, 2005)). By concluding the two contests arise under an identical cause of action, majority at 501, the majority effectively merges RCW 29A.68-.011(4), (5), and RCW 29A.68.020(1), impermissibly rendering the latter superfluous. *See Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999) (statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous). Therefore, Ms. Karr's claim of "misconduct on the part of election officers and members of the precinct election board involved [in the election]"[8] under RCW 29A-.68.020(1) cannot be barred by the doctrine of res judicata for the additional reason it was not raised by the petitioners in *Borders*.

¶54 The majority concludes its analysis by cautioning this court will invoke res judicata to bar future election

---

[7] Suzanne D. Karr Aff. of Error or Omission at 1, 3; *see also* majority at 500.

[8] Suzanne D. Karr Aff. of Error or Omission at 1.

contests if "parties to one election contest adequately represent the electorate." Majority at 502 n.4. Put differently, the majority effectively conditions the citizens' right to contest an election on our assessment of the efficacy of any previous contests. This novel approach represents a stark departure from the well-settled principle that res judicata bars a subsequent claim if and only if congruence of "(1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made" exists, *Rains*, 100 Wn.2d at 663, and threatens to undermine the doctrine in nonelection cases as well. Perhaps this language is sugar coating a poison pill—because I see no principled distinction between application of this newly invented doctrine to election contests and any other case.

¶55 While it is true in the abstract that a party with a "significant stake in the outcome"[9] of an election contest who "invest[s] significant resources in pursuing all viable grounds"[10] may also share the four concurrences of identity discussed above with a subsequent petitioner, it is not automatic and has not been demonstrated in this case. The concerns regarding conflicting verdicts in multiple jurisdictions, uncertainty regarding outcomes, and inefficient use of judicial resources raised by the majority in support of its approach are by no means unique to election contests and do not justify diluting the strict requirements of a doctrine, which can, if misapplied, strike at the heart of a person's right to access the judiciary.

¶56 Moreover the *Borders* petitioners waived their right to appeal, hardly evidencing vigorous pursuit of "all viable grounds." Had they done so, we would likely have a published precedent from this State's highest court which would either support or undermine Ms. Karr's claims—a disincentive for further litigation on her part or anyone else's, probably also avoiding some of the practical objections the majority posits.

---

[9] Majority at 502 n.4.

[10] *Id.*

## II. Conclusion

¶57 Ms. Karr has the statutory right to contest this election in court. This election contest is not barred by the doctrine of res judicata because she is not in privity with the parties in the *Borders* contest and has invoked a distinct statutory cause of action in her affidavit.

¶58 I dissent.

J.M. JOHNSON, J., concurs with SANDERS, J.

Motions for reconsideration denied May 31, 2006.