[No. 38810.    Department One.    June 8, 1967.]

JOHN J. BORDEAUX *et al., Appellants,* v. INGERSOLL RAND COMPANY, *Respondent.**

*Reported in 429 P.2d 207.

*Greive & Law* and *R. R. Bob Greive,* for appellants.

*Reed, McClure & Moceri,* by *Roy J. Moceri,* for respondent.

HALE, J.—Where the Supervisor of Industrial Insurance, on a finding that claimant's condition was not the result of the injury alleged, rejects a claim for compensation and medical aid based on a severe and protracted nosebleed occurring during employment, is such rejection res judicata of a subsequent action brought by the claimant against a third party for the same injury arising out of the same occurrence?

John J. Bordeaux worked for the Port of Seattle with the railroad track and maintenance crew. While tamping rock around railroad ties with a power-driven pneumatic tamping machine, January 19, 1962, he suffered a severe and persistent nosebleed. He was hospitalized for more than a week under professional medical care and discharged from but returned to the hospital for a few more days before the bleeding could be stopped.

On a regular one-half page form supplied by the Department of Labor and Industries, in the 2-line space allotted for that purpose, Mr. Bordeaux described the accident as "Operating Air Pneumatic Power Tamper, and nose started bleeding." The departmental form required little additional information other than claimant's age, address, the name of his attending physician, and a brief statement identifying the employer and place of the injury. Indeed, one of the cardinal virtues of the department's claim form is its simplicity; it calls for no information that a man of ordinary intelligence and modest education cannot easily supply.

The Supervisor of Industrial Insurance, in a written

order of February 16, 1962, rejected Mr. Bordeaux's claim, giving the following reasons:

1. That claimant's condition is not the result of injury alleged.

2. That claimant's condition is not the result of an injury as defined by the Workmen's Compensation Act.

After a number of procedural steps,[1] Mr. Bordeaux appealed the supervisor's order of rejection to the Board of Industrial Insurance Appeals, and then, to allow time for a third-party action, requested a 6 months' postponement of his appeal. The board granted the 6 months' continuance on condition that, if it were not prosecuted within that period, the appeal would be automatically dismissed. Claimant having failed to prosecute his appeal within the 6 months, the board thereupon gave him formal notice of dismissal.

While his appeal was—as the board expressed it in its order of June 18, 1964—in a state of suspense, Mr. Bordeaux brought the present action in August, 1964, against Ingersoll Rand Company, manufacturer of the tamping ma-

---

[1] Chronology of Procedural events:

January 24, 1962, claimant signed an accident claim and his doctor signed a physician's report, and they were filed with the department February 6, 1962.

January 31, 1962, Port of Seattle executed and filed February 6, 1962, with the department the employer's report of accident.

February 16, 1962, Supervisor of Industrial Insurance notified Mr. Bordeaux and Port of Seattle of rejection of claim.

March 14, 1962, supervisor, pursuant to a review and reconsideration, gave notice to claimant and employer that it adhered to the rejection order.

May 15, 1962, supervisor notified claimant and employer that orders of February 16 and March 14 would be deemed interlocutory only and not final, and allowed time for further investigation and evidence.

August 24, 1962, final order of rejection entered and notice thereof given claimant.

November 8, 1962, Board of Industrial Insurance Appeals entered order granting appeal.

June 18, 1964, Board of Industrial Insurance Appeals entered order that appeal is "hereby placed in suspense for a period of six months" and stating that if claimant did not proceed with the appeal and request an extension, appeal would thereafter be dismissed.

December 22, 1964, Board of Industrial Insurance Appeals, on expiration of the six months' suspension period, dismissed the appeal.

chine. He alleged that the tamping machine was new, had been recently delivered to the Port of Seattle by defendant manufacturer, and, because of defects in construction, transferred a major part of the shock and vibration to the operator of the machine, thereby causing his severe nasal hemorrhage. Defendant Ingersoll Rand pleaded as an affirmative defense the decision of the supervisor and dismissal of the appeal as res judicata of the instant action, and, after hearing evidence relating to this defense, the trial court entered a judgment of dismissal with prejudice.

The judgment of dismissal recited that, when the supervisor rejected the claim on a ruling that the nosebleed was not caused by the use of the tie tamper and the Board of Industrial Insurance Appeals dismissed an appeal from this rejection, claimant, in not appealing therefrom to the superior court, became bound thereby as a final adjudication, and that the judgment became res judicata and created a collateral estoppel, final and conclusive against claimant as to the causal connection between use of the machine and the nosebleed. Claimant Bordeaux now appeals this judgment of dismissal, particularly that part of the judgment which precludes him from relitigating the issue of causation.

Was the supervisor's decision, that operation of the pneumatic tamper did not cause plaintiff's nosebleed, res judicata of an action against the manufacturer and seller of the same machine? If not res judicata, does a collateral estoppel arise therefrom to prevent plaintiff from going forward with his case?

■ Res judicata and collateral estoppel, kindred doctrines designed to prevent relitigation of already determined causes and curtail multiplicity of actions and harassment in the courts, are at times indistinguishable and frequently interchangeable. If the differences must be noted, it could be said that res judicata is the more comprehensive doctrine, identifying a prior judgment arising out of the same cause of action between the same parties, whereas a collateral estoppel relates to and bars relitiga-

tion on a particular issue or determinative fact. Both doctrines require a large measure of identity as to parties, issues and facts, and in neither can the party urging the two doctrines as a defense be a stranger to the prior proceeding. He must have been a party, a participant, or in privity with either, and the action out of which the bar is claimed must be qualitatively the same as the case in which the doctrine is set up as a bar. Where res judicata precludes relitigation of an entire cause because of an identity of parties and issues culminating in a judgment, collateral estoppel is less inclusive, preventing retrial of but one or more of the crucial issues or determinative facts. *Owens v. Kuro*, 56 Wn.2d 564, 354 P.2d 696 (1960); *Riblet v. Ideal Cement Co.*, 54 Wn.2d 779, 345 P.2d 173 (1959); 2 Orland, Wash. Prac. § 387 (2d ed., 1965).

We recognized this principle in *Owens v. Kuro, supra,* when we said:

> A judgment is not *res judicata* nor is one collaterally estopped by judgment in a later case if there is no identity or privity of parties in the same antagonistic relation as in the decided action. *Riblet v. Ideal Cement Co.*, 54 Wn. (2d) 779, 345 P. (2d) 173; *Rufener v. Scott*, 46 Wn. (2d) 240, 280 P. (2d) 253. An estoppel must be mutual and cannot apply for or against a stranger to a judgment since a stranger's rights cannot be determined in his absence from the controversy.

In *Northern Pac. Ry. v. Snohomish Cy.*, 101 Wash. 686, 172 Pac. 878 (1918), we set forth the essential ingredients of res judicata:

> To make a judgment *res judicata* in a subsequent action there must be a concurrence of identity in four respects: (1) of subject-matter; (2) of cause of action; (3) of persons and parties; and (4) in the quality of the persons for or against whom the claim is made.

If we apply *Northern Pac. Ry. v. Snohomish Cy., supra,* to the present case, we note only one of its four ingredients, *i.e.*, a concurrence of subject matter between the proceedings before the supervisor and the present action against Ingersoll Rand—the cause of plaintiff's nosebleed. The

other three ingredients of res judicata as delineated in *Northern Pac. Ry., supra,* seem lacking.

■ Concerning the want of a concurring identity between the two causes of action (element (2) above), the claim for compensation filed originally with the supervisor was at the outset wholly nonadversary; the present action is wholly adversary. The claim before the supervisor began with delivery of a very simple document on a form supplied to the injured workman, couched in simple and nonadversary terms, giving notice of an occurrence without charging responsibility therefor. Indeed, the industrial insurance act contemplates that, at the outset, not only is the supervisor a nonadversary, but in general acts as a friend of the claimant. Only after the supervisor has decided that the claim is not well taken do the adversary proceedings commence. The rules then allow a very liberal interpretation of the claim for compensation and wide latitude in supplying additional evidence to accommodate to the new adversary nature of his cause. Such an informal claim procedure before the supervisor and board can hardly be said to coincide with the instant common-law tort claim for the same occurrence in the courts against a stranger.

These differences between the two actions also may be said to show a want of identity between the persons or parties for or against whom the claim is made as suggested in the third concurrence of identity set forth in *Northern Pac. Ry., supra,* for the workman's compensation claim is filed with the state as a friendly trustee, whereas the tort action contemplates a private adversary.

Finally, there is a lack of identity of quality between the persons and parties to the two proceedings as prescribed in the fourth concurrence of identity. The industrial insurance claim, as we have said, started as a friendly notice to an agency of the state acting in the role of protector; later, on rejection, the claim lost its friendly quality and became adversary in a very limited way but without any procedural necessity to amend or enlarge the original claim. Contrarily, defendant Ingersoll Rand, as manufacturer and

seller of the tamping machine, is brought into the present case as an avowed adversary. Defendant here participated in no way in the labor and industry proceeding—neither directly nor vicariously—nor had it any standing to do so. As a third person, having no privity with plaintiff or the department in any proceeding involving plaintiff's industrial injury, defendant was a complete stranger to plaintiff's litigation in the Department of Labor and Industries and before the Board of Industrial Insurance Appeals.

The adverse decision of the supervisor, rejecting plaintiff's claim, and the subsequent dismissal of the appeal by the board was not, therefore, res judicata of an action against defendant here for the same injuries.

Nor, we think, does a collateral estoppel arise to preclude this present action as in *Greene v. Rothschild,* 68 Wn.2d 1, 414 P.2d 1013 (1966). Although in that case collateral estoppel developed from a judgment exonerating an agent of negligence, thus precluding an identical action against the agent's principal for the same occurrence, we observe that, except for the principal as a named defendant, all of the concurrences of identity set forth in *Northern Pac. Ry. v. Snohomish Cy., supra,* were present. Since the principal's liability in the *Greene* case, *supra,* depended entirely on the negligence of his agent, he would be deemed a vicarious party to that action resting upon his agent's success at trial, but not bound by his failure there. A clear privity existed in *Greene v. Rothschild, supra,* between principal and agent, whereas we find no privity whatever between the Supervisor of Industrial Insurance and the defendant manufacturer in the present case.

We do not, of course, rule that a final decision of the Department of Labor and Industries or the Board of Industrial Insurance Appeals may never be res judicata. On several occasions, we have decided that such decisions are binding upon an employee in a subsequent action against his employer, and conversely an employer cannot reopen an issue decided adversely to him by the Department of Labor and Industries in a later suit brought by the employee.

*Shoopman v. Calvo,* 63 Wn.2d 627, 388 P.2d 559 (1964); *Miller v. St. Regis Paper Co.,* 60 Wn.2d 484, 374 P.2d 675 (1962); *Prince v. Saginaw Logging Co.,* 197 Wash. 4, 84 P.2d 397 (1938); and *Abraham v. Department of Labor & Indus.,* 178 Wash. 160, 34 P.2d 457 (1934).

But we think those decisions are based on privity between and identity of interests of employer, employee and state and on sound considerations of public policy arising from the express provisions of the industrial insurance code, which removes injuries suffered in extrahazardous employment from private controversy in the courts and abolishes all civil actions against employers, substituting in their place a form of insurance. RCW 51.04.010. Because, under the insurance scheme established by RCW Title 51, the employer has an indirect stake in the act's operations through his liability for premiums based on the accident rate experience (*Prince v. Saginaw Logging Co., supra*), it is deemed fair that he be regarded as a party to claims for relief and appeals brought under the act.

Since, in claims before the department, the employer is a party, whether actively defending or relying upon the department to assert his interests, he can claim a definitive decision by the department or the Board of Industrial Insurance Appeals as res judicata of any claim brought subsequently against him by his employee from the same accident or occurrence. We find no such privity or identity of interests between the Department of Labor and Industries, the plaintiffs, and the defendant here.

The judgment should be and is, therefore, reversed.

HILL, WEAVER, and ROSELLINI, JJ., and STAFFORD, J. Pro Tem., concur.