Gerald H. PRIEST, Appellant,

v.

AMERICAN SMELTING & REFINING
CO., Appellee.

No. 22369.

United States Court of Appeals
Ninth Circuit.

March 20, 1969.

Nelson Christensen (argued), of Howe, Davis, Riese & Jones, Seattle, Wash., for appellant.

David E. Wagoner (argued), of Holman, Marion, Perkins, Coie & Stone, Seattle, Wash., for appellee.

Before HAMLEY, MERRILL and HUFSTEDLER, Circuit Judges.

HAMLEY, Circuit Judge:

Gerald H. Priest brought this action against American Smelting & Refining Co., (Company) to recover damages in the amount of approximately $200,000 for the alleged conversion of seventy tons of high grade silver ore, and, in the alternative, for the alleged breach of a contract to reimburse plaintiff for that ore.[1] Priest is a Canadian citizen and the Company is a New Jersey corporation doing business in Washington. Jurisdiction of the United States District Court for the Western District of Washington, where the lawsuit was commenced, rests upon diversity of citizenship.

The parties filed cross-motions for summary judgment. The district court granted the Company's motion and entered a judgment dismissing the action. The court did so on the ground that, in a prior criminal prosecution against Priest in the territorial court of Yukon Territory, Canada, it was judicially determined that he was not the owner of the ore in question, and that he is therefore collaterally estopped to contend otherwise in this civil suit against the Company. Priest appeals.

The relevant facts are not in dispute. Priest is the owner of the Moon mining claims in the Mayo area of Yukon Territory. In June, 1963, he shipped approximately seventy tons of high grade silver ore from the Mayo area to the Company's smelter in East Helena, Montana. The ore was consigned to the Company for processing.[2]

Shortly after the shipment was made, three mining companies operating in Yukon Territory each claimed that the ore had been taken from its properties. One of these, United Keno Hill Mine, Ltd. (United Keno) notified the Company that it claimed title to the ore.

Late in 1963, upon the complaint of United Keno, a five-count indictment was returned against Priest in the territorial court of Yukon Territory for violations of Canadian criminal laws relating to theft and unlawful sale of precious metals. The charges pertained to Priest's acquisition of the seventy tons of ore referred to above. Priest pleaded not guilty.

While this criminal proceeding was pending, the Company smelted the seventy tons of ore in February, 1964. But instead of reimbursing Priest for the ore, the Company paid the sum of $125,322.77 to United Keno, in settlement of the amount owed for the ore.

On December 7, 1964, Priest was acquitted on the two theft charges. However, the jury was unable to reach a verdict on the three remaining charges of unlawful sale of, and conspiracy to unlawfully sell, the ore in question. He was retried on the latter charges and, on March 31, 1965, was convicted on all three. Priest was sentenced to four years imprisonment on each count, the sentences to be served concurrently. The convictions were affirmed by the Court of Appeal for Yukon Territory and Priest served the sentences until November, 1966, when he was released on parole.

Priest contends that the district court erred in holding that these Canadian criminal convictions collaterally estop him from asserting, in this civil suit arising in the State of Washington, that he

---

1. In his complaint Priest also attempted to state a second claim against defendant, but abandoned it during oral argument in this court.

2. The shipment was made in the name of Alpine Gold and Silver Mines, Ltd., pursuant to an agreement between Priest and that company. Subsequent to the consignment and before the commencement of this action, Alpine Gold and Silver Mines, Ltd., transferred all of its interest in this shipping transaction to Priest.

was the owner of the seventy tons of silver ore.

■ Since federal jurisdiction in this case is based upon diversity of citizenship, the district court and this court must apply the substantive law of the forum state, the State of Washington. See 28 U.S.C. § 1652 (1964); Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Davis v. Aetna Life Insurance Co., 9 Cir., 279 F.2d 304, 307. The substantive law of a state includes the law pertaining to res judicata. Gramm v. Lincoln, 9 Cir., 257 F.2d 250, 255 n. 6. It must therefore, we believe, also include the law pertaining to collateral estoppel. See Centennial Insurance Company v. Miller, E.D.Cal., 264 F.Supp. 431, 433.

■ In attempting to apply the Washington law of collateral estoppel we are met at the outset by a conflict of laws problem. The alleged conversion of the ore occurred in Montana. Under Priest's alternative theory, the contract to reimburse him for the ore also arose in Montana, since that is where the Company received the consigned ore. Under these circumstances, would the courts of Washington apply the rules of Washington pertaining to the collateral estoppel effect to be given a foreign criminal conviction in a subsequent civil suit, or would they apply the collateral estoppel rules of Montana?[3]

The parties have not addressed themselves to this conflict of laws question. They simply argue, in effect, that under the law of Washington, the applicable principles of collateral estoppel support their respective positions in this action, and that the law of Montana does likewise.[4]

Our independent research has failed to disclose any Washington decisional law bearing upon this conflict of laws problem. We will therefore assume, as have the parties, that the courts of Washington would, under the circumstances of this case, apply their own rules of collateral estoppel.

■ In Washington, consistent with the general rule, where collateral estoppel is applicable it prevents retrial of a crucial issue or determinative fact. Bordeaux v. Ingersoll Rand Company, 71 Wash.2d 392, 429 P.2d 207, 209–210.[5] The Company established such a similarity of issues in the case now before us. Ownership of the seventy tons of silver ore was a crucial issue in both the Canadian proceeding and in this case.

Also in keeping with the general rule, the present state of the Washington decisional law appears to be that, in civil cases, collateral estoppel may be applied only as between parties who were also parties in the prior action. The reasoning is that if the party seeking to apply collateral estoppel was not a party in the prior action, the doctrine is inapplicable because it could not have been applied against him had the decision gone the other way, and mutuality is therefore lacking. The leading case in Washington on this subject appears to be Owens v. Kuro, 56 Wash.2d 564, 354 P.2d 696, where the court said:

"A judgment is not *res judicata* nor is one collaterally estopped by judgment in a later case if there is no identity or privity of parties in the same antagonistic relation as in the decided action. Riblet v. Ideal Cement Co., 154 Wash.

---

3. Where a conflict of laws problem arises in a federal suit based upon diversity of citizenship, the conflict of law rules of the forum state are to be applied. Klaxon Co. v. Stentor Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477; Matanuska Valley Lines, Inc. v. Molitor, 9 Cir., 365 F.2d 358, 360.

4. The parties also argue, in effect, that the rules of collateral estoppel applied by Canadian courts support their respective positions.

5. The issue or fact must have been material to resolution of the controversy and necessarily litigated and determined in that former proceeding. Luisi Truck Lines, Inc. v. Washington Utilities and Transportation Commission, 72 Wash. 2d 887, 435 P.2d 654, 659. The burden of proof of establishing this identity of facts or issues is upon the party asserting the collateral estoppel (Luisi, 435 P.2d at 659).

Dec. 960, 345 P.2d 173; Rufener v. Scott, 46 Wash.2d 240, 280 P.2d 253. An esoppel must be mutual and cannot apply for or against a stranger to a judgment since a stranger's rights cannot be determined in his absence from the controversy." (354 P.2d at 699)

There is some question whether this traditional requirement of mutuality, disparaged by some, will continue to be applied by the courts of Washington in civil cases. A rejection of the doctrine, in various degrees, has been taking place in some jurisdictions. See, for example, Teitelbaum Furs, Inc. v. Dominion Insurance Co., 58 Cal.2d 601, 25 Cal.Rptr. 559, 375 P.2d 439, 440; Bernhard v. Bank of America Nat. Trust & Savings Ass'n., 19 Cal.2d 807, 122 P.2d 892, and the cases listed in 2 Orland, Washington Practice, 2nd Ed., 1968 Supp., § 390, at 93–96. However, we have found no Washington Supreme Court case adopting this trend; indeed that court has recently quoted with approval the rule of mutuality enunciated in *Owens*. See Bordeaux v. Ingersoll Rand Company, 71 Wash.2d 392, 429 P.2d 207, 210.

But defendant urges that, whatever the Washington rule may be as to the requirement of mutuality in civil cases, it would be erroneous to hold that Washington requires a showing of mutuality where the judgment relied upon as working a collateral estoppel was entered in a prior criminal proceeding.

As Professor Lewis H. Orland has observed, probably a majority of the courts in the country still refuse to give res judicata (and therefore collateral estoppel) effect to a prior criminal conviction in a subsequent civil case, such refusal being due, at least in part, to traditional notions of mutuality. 2 Orland, Washington Practice, 2nd Ed., 1968 Supp., § 390, at 96. As Professor Orland further notes, however, an increasing number of

courts are permitting the use of criminal judgments in subsequent civil suits, because of the different standards of proof applicable in criminal and civil cases. Professor Orland continues:

"In a criminal case, the state's proof of guilt must be made beyond a reasonable doubt; the plaintiff in a civil action need only prove his case by a preponderance of the evidence. Because of this difference in the burden of proof, it is reasoned that, inasmuch as a greater burden of proof has been sustained on the issue in the prior criminal trial, and the motivation to defend such cases is generally strong, the use of the criminal judgment is not unfair."

■■ Our problem is to determine whether the courts of Washington would give collateral estoppel effect to a prior criminal judgment. Apparently no Washington court has categorically ruled upon this question. In two cases, however, the Washington Supreme Court, by way of dictum, has referred to the general rule denying collateral estoppel effect to criminal judgments in terms which seem to imply approval of that rule. See Billington v. Schaal, 42 Wash. 2d 878, 259 P.2d 634, 637; Reynolds v. Donoho, 39 Wash.2d 451, 236 P.2d 552, 555.[6]

Professor Orland also points out that it has long been a part of the professional "folklore" in Washington that a prior criminal judgment cannot even be admitted as evidence in a subsequent civil case as tending to prove the facts on which the prior judgment was based. He cites Instruction 46, King County Uniform Jury Instructions (1955) and Instruction 70.07, Washington Pattern Jury Instructions (1957). 2 Orland, Washington Practice, 2nd Ed., 1968 Supp., § 390, at 98.[7]

6. Considered dictum of a state supreme court should not be ignored when a federal court is attempting to construe or ascertain the meaning of local law. United States Fidelity & Guaranty Co.

v. Anderson Construction Co., 9 Cir., 260 F.2d 172, 176, note 17.

7. The Supreme Court of Washington has held that a judgment of conviction for drunkenness may be introduced, on the

In the light of these clues, tending to indicate that Washington would not give collateral estoppel effect to a prior criminal conviction, we are not inclined to predict otherwise.

Furthermore, the basic reason given by most courts for giving collateral estoppel effect to criminal convictions despite the lack of mutuality, namely, that one being prosecuted can prevent conviction merely by raising a reasonable doubt as to his guilt, is not present here. The two substantive counts of which plaintiff was convicted in the Yukon territorial court were for violations of Section 337 (1) (b) of the Criminal Code of Canada. Under that unusual statute the prosecutor did not have to prove, beyond a reasonable doubt, nor even by a fair preponderance of the evidence, that the ore which the accused sold or purchased was not the property of the accused. Instead, the statute expressly places the burden of proof upon the accused person of establishing that he was the owner, agent of the owner, or was otherwise authorized to sell or purchase the ore.[8]

The Company cites several cases which, in its opinion, indicate that the rule of some jurisdictions that criminal convictions may work a collateral estoppel in a subsequent civil case, is not based upon the increased burden of proof in criminal cases, but upon the ground that estoppel should apply to prevent a convicted person from profiting by his own criminal conduct. The Company asserts that this policy should govern our decision in this case.

It is true that if Priest took this silver ore without authority, he is trying to profit from that wrong by bringing this civil action for conversion or breach of a contract to pay him for the same ore. We will assume for present purposes, although the district court has not so decided, that Washington courts would not permit one to profit, with the assistance of the courts, from his own wrong.

Therefore, evidence pertaining to the manner in which Priest obtained the ore in question is relevant to the question of whether Priest should prevail in this civil suit. However, we are not here concerned with whether evidence of a past crime concerning the ore is relevant, and therefore admissible, but rather with whether the criminal conviction should collaterally estop Priest from denying past wrongful conduct. It may well be that the Washington courts, when presented with the problem, would hold that the test of whether a criminal judgment should be given collateral estoppel effect should depend upon its trustworthiness rather than upon the circumstance that the fact of past wrongdoing is relevant.[9]

---

limited question of damages, in a subsequent civil case as evidence of a party's lack of sobriety. But the court was careful to point out that while such evidence could be regarded as persuasive, it would not be conclusive evidence of that fact. See Fleming v. City of Seattle, 45 Wash.2d 477, 275 P.2d 904, 910.

8. The third count on which plaintiff was convicted by the court of Yukon Territory, charged conspiracy to commit a Section 337(1) (b) offense. The jury was instructed that the prosecution was required to prove beyond a reasonable doubt that plaintiff conspired with others to sell or purchase ore which he could not prove he was authorized to sell or purchase. Thus, even as to the conspiracy count, plaintiff did not have full advantage of the normal rule that the burden is on the prosecution to prove guilt beyond a reasonable doubt.

9. Some of the decisions cited by the Company on this issue do not stand for the proposition that the need to prevent one from profiting by a past wrong is the circumstance that gives collateral estoppel effect to a criminal conviction in a later civil action. Instead they appear to stand for the proposition that, where evidence of past wrongful conduct is relevant to prevent one from profiting by his criminal acts, a criminal judgment is not only admissible but will be given collateral estoppel effect because of the heavy burden of proof upon the prosecution in the criminal case. See Teitelbaum Furs, Inc. v. Dominion Insurance Co., 58 Cal.2d 601, 25 Cal.Rptr. 559, 375 P.2d 439; Austin v. United States, 7 Cir., 125 F.2d 816; In re Kravitz' Estate, 418 Pa. 319, 211 A.2d 443.

One case cited by defendant is not in point because it involved the introduc-

█ Under the circumstance referred to earlier, namely, that in the criminal convictions in question Priest had the burden of proof as to an essential element, we doubt that the Washington courts would find Priest's conviction sufficiently trustworthy to entitle it to collateral estoppel effect. When there is added the circumstances that the Washington courts have not yet given collateral estoppel effect to criminal judgments, even where the usual heavy burden of proof obtained, and that, in dictum, the Washington Supreme Court has seemed to disapprove giving criminal judgments that effect, we think the federal courts ought not now to hold that Washington would apply the doctrine under the circumstances of this case.

█ In so holding, we have not overlooked the rule that on questions of state law, the determinations of a district court sitting in that state are entitled to great weight. See Owens v. White, 9 Cir., 380 F.2d 310, 315. Here, however, the considerations discussed above lead us to believe that the district court was clearly wrong in concluding that the courts of Washington would give collateral estoppel effect to the described Yukon Territory criminal conviction.

It is therefore our opinion that the district court erred in granting summary judgment for the Company on the ground that, because of the criminal judgment, Priest is collaterally estopped to contend that he had authority to ship and consign the ore to defendant for smelting.

The Company further argues that if we do not sustain this ruling by the district court, we should in any event affirm

because Priest's claims are barred by the statute of limitations.

The district court has not, as yet, dealt with this question. Moreover, we are not convinced that, as the record now stands, there is no genuine issue of material fact pertaining to that defense. Accordingly, we do not decide that question at this time.

Reversed and remanded for further proceedings.

tion of a criminal conviction of the *defendant* (instead of the plaintiff) to establish one of the elements which the plaintiff had to prove. See Hurtt v. Stirone, 416 Pa. 493, 206 A.2d 624.

Those decisions cited by defendant which do give the need of preventing one from profiting by his own wrong as a reason why collateral estoppel should apply, also give, as another reason, the heavier burden of proof in a criminal case. See In re Estate of Laspy, Mo.

App., 409 S.W.2d 725; Eagle, Star and British Dominions Ins. Co. v. Heller, 149 Va. 82, 140 S.E. 314. It is difficult to categorize Taylor v. Taylor, 257 N.C. 130, 125 S.E.2d 373, also cited by defendant. It may be that, in this case, the court relied on the rule that one should not be permitted to profit by his own wrong as the sole reason for giving collateral estoppel effect to the prior criminal convictions.