**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Filed
Washington State
Court of Appeals
Division Two

March 21, 2023

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| JOSHUA PENNER and TODD McKELLIPS, individually and on behalf of a class of all persons similarly situated, | No.  57134-0-II |
| Appellants, | |
| v. | |
| CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY and STATE OF WASHINGTON, | PUBLISHED OPINION |
| Respondents. | |

PRICE, J.  — Joshua Penner[1] appeals the superior court's order granting summary judgment in favor of Central Puget Sound Regional Transit Authority and the State (collectively Sound Transit) based on the doctrine of res judicata as a result of previous litigation asserting the same claims.  The superior court also decided, in the alternative, that stare decisis and the statute of limitations barred Penner's claims.  On appeal, Penner argues that res judicata does not apply because he was not a party to the previous litigation.  He also claims the superior court's alternative holdings were in error.  We disagree and affirm.

---

[1] Joshua Penner and Todd McKellips are both representatives in a proposed class action and will be referred to collectively as "Penner."

No. 57134-0-II

FACTS

I. BACKGROUND FACTS

In 1992, the legislature authorized the most populous counties in this state to create a local agency to plan and implement a "high capacity transportation system." *Black v. Cent. Puget Sound Reg'l Transit Auth.*, 195 Wn.2d 198, 201, 457 P.3d 453 (2020) (*Black* I) (quoting ENGROSSED SUBSTITUTE H.B. 2610, at 2, 52d Leg., Reg. Sess. (Wash. 1992)). Using this authority, King, Pierce, and Snohomish Counties voted in 1993 to create Sound Transit "to address traffic congestion in the central Puget Sound region." *Pierce County v. State*, 159 Wn.2d 16, 21, 148 P.3d 1002 (2006) (*Pierce County* II); *Black* I, 195 Wn.2d at 202. In 1996, voters in those counties approved a motor vehicle excise tax (MVET) to fund bus services and rail lines through Sound Transit. *Black* I, 195 Wn.2d at 202. MVETs are calculated by a depreciation schedule based on the vehicle's value, set out by statute. *Id.*; former RCW 82.44.041 (1990). Voters authorized a 0.3 percent MVET.

At the time, the MVET utilized a depreciation schedule created by the legislature in 1990, which calculated the value of a vehicle based on its age. *Black* I, 195 Wn.2d at 216 (Gordon McCloud, J., dissenting). A depreciation schedule is a table that determines the MVET a vehicle owner must pay based on the years of service of the vehicle and the latest purchase price of a vehicle, which reduces as the vehicle ages. RCW 82.44.035. As detailed below, the legislature and voters have changed the depreciation schedule several times over the past twenty years, thus changing the MVET amount required to be paid by vehicle owners.

2

No. 57134-0-II

In 1998, voters approved Referendum 49 (1999 depreciation schedule),[2] which went into effect in 1999. The 1999 depreciation schedule repealed the then-effective 1996 depreciation schedule by reducing the taxable value of certain vehicles. *Black* I*,* 195 Wn.2d at 216 (Gordon McCloud, J., dissenting).

The next year, in 1999, Sound Transit issued $350 million in bonds (Sound Transit Bonds) to initially finance its projects, pledging revenues from sales tax and the MVET in place in 1996, as modified by the 1999 depreciation schedule, for payment of the bonds. *Id.* at 202. The bonds will expire in 2028. *Id.*; *see also Pierce County* II*,* 159 Wn.2d at 25.

Also in 1999, voters approved Initiative 695 (I-695),[3] which was intended to reduce motor vehicle tabs to $30. *Pierce County. v. State*, 150 Wn.2d 422, 447, 78 P.3d 640 (2003) (hereinafter *Pierce County* I); *Black* I*,* 195 Wn.2d at 216 (Gordon McCloud, J., dissenting). The initiative purported to repeal all MVETs and corresponding depreciation schedules, including the 1999 depreciation schedule. *Black* I, 195 Wn.2d at 216 (Gordon McCloud, J., dissenting). Our Supreme Court held I-695 was unconstitutional in its entirety in 2000. *Amalg. Transit Union Loc. 587 v. State*, 142 Wn.2d 183, 257, 11 P.3d 762, 27 P.3d 608 (2000).

But in 2000, before the Supreme Court's opinion was finalized, the legislature enacted portions of I-695, including repealing the statewide MVET and allowing local entities to collect the MVET under specific conditions. *Black* I, 195 Wn.2d at 216 (Gordon McCloud, J., dissenting).

---

[2] In 1998, the legislature passed Engrossed House Bill (EHB) 2894, (LAWS OF 1998, ch. 321); EHB 2984, § 4 was referred to the voters as part of Referendum 49.

[3] LAWS OF 2000, ch. 1, § 3.

3

No. 57134-0-II

Two years later, in 2002, voters approved Initiative 776 (I-776), which was also intended to limit motor vehicle tabs. *Pierce County* I, 150 Wn.2d at 427. However, I-776 also purported to repeal the use of MVETs for transit funding, repeal the depreciation schedule used to calculate the MVET, and deny Sound Transit's authority to collect and levy MVETs, which were central to funding the bus and rail systems and repaying its bonds. *Black* I, 195 Wn.2d at 202.

In 2006, in *Pierce County* II, our Supreme Court declared these portions of I-776 related to Sound Transit unconstitutional, holding the portions violated article I, section 23 of the Washington Constitution through the improper impairment of contracts, specifically the contracts with the bondholders. 159 Wn.2d at 27, 51.

Also in 2006, just prior to the *Pierce County* II decision, the legislature passed SUBSTITUTE S.B. 6247, codified as RCW 82.44.035 (2006 depreciation schedule), to provide statutory guidance to all local jurisdictions with authority to use MVETs to calculate the correct values, since I-776 had purported to repeal the MVETs. FINAL B. REP. ON SUBSTITUTE S.B. 6247, at 1, 59th Leg. Reg. Sess. (Wash. 2006). This legislation enacted new depreciation values used to calculate the MVETs. *Black* I, 195 Wn.2d at 218 (Gordon McCloud, J., dissenting).

In 2010, in an attempt to "streamline and make technical amendments" to the vehicle registration statutes and in response to *Pierce County* II, the legislature passed Senate Bill 6379, which amended RCW 81.104.160 (2010 statute). LAWS OF 2010, ch. 161, § 1; *Black* I, 195 Wn.2d at 202. The previous 2006 depreciation schedule still applied to the MVET. *See* FINAL B. REP. ON S.B. 6379, 61st Leg., Reg. Sess. (Wash. 2010). However, because of the *Pierce County* II holding, the 2010 statute apparently attempted to exclude the Sound Transit Bonds from the application of the 2006 depreciation schedule. *See* former RCW 81.104.160 (2010). But instead

4

No. 57134-0-II

of referring to the 1999 depreciation schedule then being used by Sound Transit, the statute referred to the repealed 1996 schedule. *See* former RCW 81.104.160 (2010).

In 2015, the legislature again amended RCW 81.104.160 (2015 statute) and still generally imposed the 2006 depreciation schedule on MVETs but, once again, attempted a carve out for the Sound Transit Bonds. But like the 2010 statute, the 2015 statute referred to the 1996 laws, not the 1999 depreciation schedule. Former RCW 81.104.160(1) (2015).

II. BLACK LITIGATION

In 2018, a group of taxpayers, including Taylor Black (Black), filed a complaint against Sound Transit and the State, arguing the 2015 statute was unconstitutional under article II, section 37 of the Washington Constitution because it did not restate in full any depreciation schedules referenced in the statute. *Black* I, 195 Wn.2d at 203. Shortly before oral argument, the State filed a notice that Sound Transit had been applying the 1999 depreciation schedule instead of the depreciation schedule in place in 1996 that was referenced in the 2015 statute. *Id.* at 204. The *Black* I court determined Sound Transit's notice was irrelevant to the case, stating, "[B]ecause Sound Transit's actions d[id] not have any bearing on the constitutionality of the MVET statute itself, this notice d[id] not impact [their] holding." *Id*.

The court then concluded that the 2015 statute did not violate article II, section 37 of the Washington Constitution because it was a complete act and "d[id] not render [] other existing statutes erroneous . . . ." *Id.* at 214.

In 2020, after the *Black* I decision, Black filed a motion for reconsideration, arguing Sound Transit's admitted use of the 1999 depreciation schedule in face of the 2015 statute's requirement to use the 1996 depreciation schedule violated article II, section 37 of the Washington Constitution.

5

No. 57134-0-II

Black asked the court to vacate its decision in *Black* I and remand the case for consolidation with Black's second complaint, which was to be filed imminently. The court denied the motion for reconsideration.

Within days of filing his motion for reconsideration based on Sound Transit's use of the 1999 depreciation schedule, Black filed his second complaint, a proposed class action, against Sound Transit and the State (*Black* II),[4] alleging 19 causes of action, including seeking to recover tax refund payments and an injunction to prevent Sound Transit's use of the 1999 depreciation schedule, as well as challenging the constitutionality of the 2010 and 2015 statutes.

Sound Transit moved for summary judgment at the superior court, arguing Black's complaint was barred by the holdings in *Black* I and *Pierce County* II. Sound Transit also argued res judicata applied to the constitutionality claims in *Black* II since the *Black* I court's denial of Black's motion to reconsider was a final judgment. Finally, Sound Transit argued the three-year statute of limitations had run on any refund claims that were based on the 2010 and 2015 statutes.

Black responded that his claims were not barred by *Black* I and *Pierce County* II, nor did the statute of limitations apply to his claims.

The superior court in *Black* II granted Sound Transit's motion for summary judgment, agreeing with Sound Transit that the lawsuit was precluded by *Black* I and *Pierce County* II[5] and

---

[4] Black alleged he had standing because he was a taxpayer of the region where Sound Transit operated and paid, at some point, the MVET.

[5] In *Black* II, the superior court specifically stated, "I am going to grant the motion for summary judgment from [Sound Transit] . . . . I do accept and agree with your argument that the lawsuit is precluded by the [*Black* I] case, as well as the case referred to as *Pierce County* II . . . ." Clerk's Papers (CP) at 664.

6

No. 57134-0-II

res judicata applied to the constitutionality claims. The superior court also ruled that the tax refund claims were barred by the statute of limitations and the reasoning of *Black* I also applied to bar those claims. The superior court further ruled that Black was not entitled to an injunction. Given its rulings, the superior court in *Black* II ruled any discovery issues were moot.

Black initially appealed the *Black* II summary judgment dismissal to this court, but then later voluntarily dismissed the appeal.

III. PROCEDURAL HISTORY

Following Black's voluntary dismissal of the *Black* II appeal, Penner,[6] with representation from the same attorneys who represented Black, filed a new proposed class action lawsuit against Sound Transit in 2021. Penner's complaint was identical to *Black* II's complaint, including the identical causes of action; only the names of the parties changed. The lawsuit alleged the same exact 19 causes of action as Black did, including seeking a return to the taxpayers of tax proceeds obtained by Sound Transit's misapplication of the MVET depreciation schedule (causes of action 1, 8, 16, and 17), challenging the constitutionality of the 2010 and 2015 statutes and the 2015 statute ballot title (causes of action 2-7, 9-15), and seeking an injunction to bar Sound Transit from applying the 1999 depreciation schedule (causes of action 18-19).

Sound Transit again moved for summary judgment. Pointing to the superior court's decision in *Black* II, Sound Transit argued Penner's complaint should be dismissed due to res judicata because Penner and Black shared a "unity of interest" as taxpayers with identical claims and *Black* II was binding precedent. CP at 734-35. Alternatively, Sound Transit argued that the

---

[6] Like Black, Penner alleged he has standing because he is a taxpayer and a resident of the region where Sound Transit operates and, accordingly, paid the MVET at some point.

No. 57134-0-II

tax refund claims were moot and nonjusticiable; res judicata, collateral estoppel, and stare decisis

(from *Pierce County* II and *Black* I) barred the constitutionality claims; and the ballot title claim

was untimely and nonjusticiable.

Penner responded that res judicata and collateral estoppel did not apply because Penner

was not a party to the *Black* II litigation and no taxpayer "unity of interest" doctrine existed in this

context. CP at 759. As for the alternative arguments, Penner responded that the subject matter

and causes of action in the Penner litigation differed from the *Black* I litigation because *Black* I

only challenged the constitutionality of the statute under article II, section 37 of the Washington

Constitution. Penner finally argued that stare decisis from *Black* I and *Pierce County* II did not

apply, nor was *Black* II binding, and he was entitled to discovery.

The superior court granted Sound Transit's motion for summary judgment, finding all

claims were barred under res judicata because of the final decision in *Black* II. The court further

ruled, apparently in the alternative, that the tax refund and 2015 constitutionality claims were

precluded by stare decisis from *Black* I and *Pierce County* II, the tax refund claims were barred by

the statute of limitations,[7] and the 2010 constitutionality claims were time barred and moot. The

court also determined the ballot title claims were nonjusticiable and untimely, and that Penner

forfeited his claim because he did not defend the merits.

Penner sought discretionary review of the superior court's ruling with our Supreme Court,

which the court denied. Penner then appealed to this court.

---

[7] The superior court expressly adopted the reasoning for the stare decisis and statute of limitation rulings from the *Black* II oral hearing.

8

No. 57134-0-II

ANALYSIS

I.  STANDARD OF REVIEW

We review summary judgment rulings de novo.  *M.E. v. City of Tacoma*, 15 Wn. App. 2d 21, 31, 471 P.3d 950 (2020), *review denied*, 196 Wn.2d 1035 (2021).  "Summary judgment is appropriate if the pleadings, affidavits, depositions, and admissions demonstrate the absence of any genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *Id.*  The reviewing court should view "the facts and the reasonable inferences from those facts in the light most favorable to the nonmoving party."  *Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 794, 64 P.3d 22 (2003).  We may affirm the superior court's summary judgment ruling on any ground supported by the record.  *Pac. Marine Ins. Co. v. Dep't of Revenue*, 181 Wn. App. 730, 737, 329 P.3d 101 (2014).

II.  RES JUDICATA

Penner argues res judicata does not apply to his case because he was not in privity with any party to the *Black* II litigation as required for the doctrine to apply.  Sound Transit responds that Penner and Black share a common public interest as taxpayers; therefore, they are in privity for res judicata purposes.  We agree with Sound Transit.

A.  LEGAL PRINCIPLES

We review an application of res judicata de novo.  *Lynn v. Dep't of Lab. & Indus.*, 130 Wn. App. 829, 837, 125 P.3d 202 (2005).  " 'The doctrine of res judicata rests upon the ground that a matter which has been litigated, or on which there has been an opportunity to litigate, in a former action in a court of competent jurisdiction, should not be permitted to be litigated again.  It puts an end to strife, produces certainty as to individual rights, and gives dignity and respect to judicial

9

No. 57134-0-II

proceedings.' " *Marino Prop. Co. v. Port Comm'rs*, 97 Wn.2d 307, 312, 644 P.2d 1181 (1982) (quoting *Walsh v. Wolff*, 32 Wn.2d 285, 287, 201 P.2d 215 (1949)).

Res judicata attempts to prevent piecemeal litigation and supports the finality of judgment. *Spokane Rsch. & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005); *see also Bordeaux v. Ingersoll Rand Co.*, 71 Wn.2d 392, 395, 429 P.2d 207 (1967) ("Res judicata [is] . . . designed to . . . curtail multiplicity of actions and harassment in the courts . . . ."); *In re Recall of Fortney*, 199 Wn.2d 109, 124, 503 P.3d 556 (2022) ("[W]e will not subject an elected official to answer the same charges each time a different citizen is willing to put their name on a recall petition.").

Res judicata requires a valid and final judgment on the merits in a previous suit. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 865, 93 P.3d 108 (2004). Summary judgment is a final judgment on the merits. *DeYoung v. Cenex Ltd.*, 100 Wn. App. 885, 892, 1 P.3d 587 (2000), *review denied,* 146 Wn.2d 1016 (2002). The party asserting res judicata bears the burden of proof. *Hisle*, 151 Wn.2d at 865.

"Res judicata prevents relitigation of the same claim where a subsequent claim involves the same (1) subject matter, (2) cause of action, (3) persons and parties, and (4) quality of persons for or against the claim made." *Harley H. Hoppe & Assocs. v. King County*, 162 Wn. App. 40, 51, 255 P.3d 819, *review denied*, 172 Wn.2d 1019 (2011); *see also Weaver v. City of Everett*, 194 Wn.2d 464, 480, 450 P.3d 177 (2019).

No. 57134-0-II

Penner focuses on the third element, arguing res judicata does not apply because he was not a party nor was he in privity to a party in the *Black* II litigation.[8]

A review of the caselaw shows that there is an exception to this third element that may be applicable in certain cases for plaintiffs that share a common public interest.

Generally, for a party to be the same persons or parties for res judicata purposes, they must have the same identities as the parties from the previous litigation. *See Neighbors v. King County*, 15 Wn. App. 2d 71, 79, 479 P.3d 724 (2020) (finding the parties in both litigations were the same because "[t]he four identities here are the same"). Although identity of the parties is typically strict under this element, " 'nominally different parties' " may be precluded from bringing subsequent claims if the parties " 'have sufficiently identical interests to satisfy the identity of parties' inquiry' because they possess 'the same legal interests as all citizens of the state.' " *In re Election Contest Filed by Coday*, 156 Wn.2d 485, 501, 130 P.3d 809 (2006) (internal quotation marks omitted) (quoting *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 261, 961 P.2d 343 (1998)), *cert. denied*, 549 U.S. 976 (2006). " 'Identity of parties is not a mere matter of form, but of substance. . . . [P]arties nominally different may be, in legal effect, the same.' " *Rains v. State*, 100 Wn.2d 660, 664, 674 P.2d 165 (1983) (alterations in original) (internal quotation marks omitted) (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402, 60 S. Ct. 907, 84 L. Ed. 1263 (1940)).

Historically, even if the plaintiffs were not the same persons, Washington courts have applied res judicata to cases involving common public rights if the plaintiffs shared identities as

---

[8] Penner does not argue on appeal that the superior court erred in finding this case and *Black* II had the same subject matter, cause of action, or quality of persons for or against the claim made.

No. 57134-0-II

taxpayers. *See State ex rel. Forgues v. Superior Ct. of Lewis County*, 70 Wash. 670, 673-74, 127 P. 313 (1912). In *Forgues*, a relator filed suit against the Centralia city clerk, alleging a petition prohibiting the sale of alcoholic beverages was void because certain elector voters who signed a petition did not properly state where they lived or their post office addresses. *Id.* at 671. The court stated,

> "A judgment for or against a municipal corporation, in a suit concerning a matter which is of general interest to all the citizens or taxpayers thereof, as the levy and collection of taxes, or public contracts or other obligations, or public property, its title, character or boundaries, is binding, not only on the municipality and its officers, but also upon such citizens or taxpayers, in so far as concerns their rights or interests as members of the general public . . . . [A] judgment between certain residents or taxpayers and the municipality may be conclusive on all other citizens similarly situated, and where an action between individuals concerns public interests or rights, and the municipality is represented in the litigation by its proper officers and takes part in the prosecution or defense of the action, it is estopped by the result".

*Id.* at 673-74 (*quoting*, 23 CYC. *Judgments* 1269 (1906)). The court determined the issues in the relator's case were previously determined in an earlier case, both plaintiffs sued in their capacity as taxpayers, and any remedies would be common to both relators. *Id.* at 674-75. Therefore, the *Forgues* court barred the relator's claim on the basis of res judicata. *Id.*

But res judicata in this context only applies if the cause of action is common to all taxpayers and is not dependent on rights particular to the specific plaintiff. In *In re Assessment for Local Improvement Sewer Dist. No. 1 of City of Chehalis*, 84 Wash. 565, 147 P. 199 (1915) (*Summersett*), a constructor of sanitary sewers appealed a decision which set aside and cancelled special assessments levied on certain properties—levies which the constructor claimed he was due. *Id*. at 566. The appellant argued that the decision was error because a previous suit found the city was

12

No. 57134-0-II

required to pay the levies and res judicata should have compelled the same result in his case. *Id*. at 569-70. The court rejected the argument, stating:

> [A] final judgment rendered by a court of competent jurisdiction for or against a municipality, adjudicating a matter of general concern to its citizens and taxpayers, is binding alike upon the municipality and all of its citizens and taxpayers in so far as there is thereby adjudicated such matter of general concern . . . . [I]t must be remembered that he is not by such a judgment precluded from asserting any right which he holds as an individual peculiar to himself, and which he does not share with the public.

*Id*. at 571.

Accordingly, the *Summersett* court decided property owners were not barred by res judicata to challenge certain assessments because they each had individual rights to have their property valued, which they did not share in common with others. *Id*. at 576 ("We conclude that the judgment of the superior court for Lewis County, which was affirmed by this court in the mandamus case requiring the city commission to proceed with the levying of assessments, was not, and could not have been, *res judicata* of the rights of *Summersett* . . . in so far as the question of benefits and apportionment thereof is concerned.").

Recent Washington courts have used similar rationale to *Forgues* to bar claims on res judicata grounds in cases involving voters, even though the parties in the second litigation were not identical to the parties in the previous litigation. *See Coday*, 156 Wn.2d at 502-03; *Pearsall-Stipek*, 136 Wn.2d at 261 (court applying res judicata to a nonparty claim in an election recall case); *Fortney*, 199 Wn.2d at 124-26 (court applying res judicata to a nonparty claim in election recall case); *Snyder v. Munro*, 106 Wn.2d 380, 721 P.2d 962 (1986) (court applying res judicata to nonparty claims because, as citizens of the state, plaintiffs had their interests properly represented in previous litigation that included major political parties and state officials).

13

No. 57134-0-II

In the case of *Coday*, our Supreme Court held that a plaintiff was barred by res judicata in an election contest claim because "her interest [was] identical to that of the [previous suit she was not a party to] and of all citizens of the state: ensuring a fair, just, and accurate election. She [was], therefore, an identical party . . . for res judicata purposes." 156 Wn.2d at 502. The *Coday* decision discussed four different plaintiffs who were challenging the election of Governor Gregoire on four different grounds. *Id*. at 488. Of the four plaintiffs, only one, Karr, was barred by res judicata because her asserted grounds were identical to previous litigation against the governor's election. *Id*. at 501-02. Notably, the *Coday* court explained it only applied res judicata against Karr's claims because the parties in the previous litigation had adequate representation and a "significant stake in the outcome of the contest and invest[ed] significant resources in pursuing all viable grounds for the contest." *Id*. at 502 n.4. In other words, res judicata applied only in "substantially identical contests." *Id*. The court specifically cautioned that res judicata should not apply if the previous litigants did not have adequate representation. *Id*.

Washington courts have applied *Coday*'s reasoning in other contexts, such as public records requests. *See Hoppe*, 162 Wn. App. at 51-53. In *Hoppe*, a company, Harley H. Hoppe & Associates, Inc., filed a public records request, which King County refused to fulfill. *Id*. at 46-47. The case ended when the superior court granted King County's summary judgment motion. *Id*. at 47. Later, Hoppe's employee, who was also the daughter of Hoppe's owner, filed an identical public records request, and was again denied. *Id*. at 48. Although Hoppe and the employee were not identical parties, the *Hoppe* court applied res judicata, stating, "[T]he same reasoning [as *Coday*] applies here in the public records act context; any member of the public has standing to bring such a public records request. We hold that . . . [Hoppe's employee] is in sufficient privity

14

No. 57134-0-II

with Hoppe to satisfy the concurrence of identity inquiry and thus meets the third and fourth elements of a res judicata analysis." *Id*. at 51-52.

But courts have been careful to limit the reach of *Coday's* holding. For example, Division Three of this court did not extend *Coday*'s reasoning to two different Eastern Washington Growth Management Hearings Board (Board) claims because the interests of the two plaintiffs were not sufficiently similar. *Stevens County. v. Futurewise*, 146 Wn. App. 493, 505, 192 P.3d 1 (2008), *review denied*, 165 Wn.2d 1038 (2009). There, a county resident filed a petition for review of Title 13 of a Stevens County ordinance. *Id*. at 500-01. Futurewise then later filed its own petition with the Board for review of Title 13. *Id*. at 501. The court found that the "various citizens and citizen groups challenged Title 13 as it affected *their particular interests*," and therefore, "[t]hese various parties, including Futurewise in the most recent petition, did not have sufficiently identical legal interests to trigger the [*Coday*] voter exception to the privity requirement." *Id*. at 505 (emphasis added).

B. APPLICATION

Penner argues that applying the *Coday* exception to cases outside of the election context is an unprecedented expansion unsupported by the case law and is inferior to class action litigation under CR 23.

As seen above, *Coday's* reasoning has already extended beyond election recall cases. But the reasoning should be only applied in limited situations. Combining *Forgues*, *Summersett,* and *Coday* with their progeny, we hold that the common public interest exception for res judicata should only apply when the interests of the parties are both identical and of a clearly public nature and, importantly, there has been adequate representation.

15

No. 57134-0-II

Applying this standard here, Penner's claims are properly barred by res judicata. First, the interests involved here are both public and identical. In *Black* II, Black asserted standing because he was a taxpayer of the region where Sound Transit operated and paid, at some point, the MVET. Penner alleges standing on the exact same basis. In addition, they both allege the same common public interest: to ensure the constitutionality of the statutes enacted in this state and a return of proceeds "to taxpayers." Indeed, there is nothing unique or different between Penner's interests and Black's interests, unlike the litigants in *Summersett* and *Futurewise*. Penner also asserts the exact same issues and claims as Black as a taxpayer in the Sound Transit region—in fact, Penner's complaint is substantively identical to Black's complaint, with only differences in the formatting of the document.

Second, neither party has alleged that Black had inadequate representation in the earlier *Black* II litigation. Without question, Penner cannot reasonably make such an argument because the lawyers for both parties are the same. Thus, the two aspects of *Coday's* reasoning, identical common public interest and adequate representation, are met.

Moreover, applying res judicata in this context is appropriate. For example, its application prevents "serial litigation" that is of concern in the *Coday* line of cases. Similar to election recall petitions at issue in *Coday*, unless it has the doctrine of res judicate available, Sound Transit could be forced to defend multiple cases with the exact same claims where plaintiffs' interests were adequately represented previously. This would waste not only public funds but also court resources.

Penner contends applying res judicata here would erode many of the safeguards that exist in class action litigation, relying on due process concerns discussed in the federal case, *Taylor v.*

16

No. 57134-0-II

*Sturgell*, 553 U.S. 880, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008). For example, Penner argues that a class action would allow individual members to determine for themselves whether they choose to be bound by the outcome of the litigation, whereas a common public interest exception for res judicata would unfairly bind those individuals.

But class actions are only appropriate if it "is superior to other available methods for the fair and efficient adjudication of the controversy." CR 23(b)(3). And here, it has not been shown that a class action is necessarily a superior form of litigation to a declaratory judgment action with application of the common public interest exception for res judicata. Indeed, the doctrine of res judicata in this context has its own elements that provide protection for future litigants, like requiring the same cause of action, same subject matter, and a final decision. And the additional requirements derived from *Coday* of identical common public interest and adequate representation provide further protection to the taxpayers who are not actual litigants.[9]

Here, looking at the four requirements for res judicata—(1) subject matter, (2) cause of action, (3) persons and parties, and (4) quality of persons for or against the claim made—the doctrine appropriately bars Penner's claims after the final decision in *Black* II. With identical

---

[9] Penner's reliance on *Taylor* for its position is unpersuasive. *Taylor* is a federal case that does not discuss or apply Washington law. Further, in a portion of its decision, the *Taylor* court rejected the application of a federal "public law" exception to privity of parties for res judicata for the Freedom of Information Act requests based, in large part, on the fact that the relief was specific to individuals and would not have inured to the benefit of the public. 553 U.S. at 902-03. But here, as previously explained, a successful challenge to the 2015 statute would likely result in relief to all persons who paid the Sound Transit MVET in Washington, not just individual refunds to Penner or Black. The *Taylor* court also explained that in claims involving the "public law" exception in federal law (conceptually similar common public interest issues discussed in *Coday*), " 'the States have wide latitude to establish procedures [limiting] the number of judicial proceedings that may be entertained.' " *Id.* at 902 (alteration in original) (quoting *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 803, 116 S. Ct. 1761, 135 L. Ed. 2d 76 (1996)).

No. 57134-0-II

complaints between Penner and Black, the subject matter and causes of action are the same. The defendant, Sound Transit, is the same. And, consistent with the reasoning in *Coday*, because Black was adequately represented, had a significant stake in the outcome of the litigation, and invested significant resources in pursuing all viable grounds for the litigation, the common public interest taxpayer exception to the same party requirement is met. *See Coday*, 156 Wn.2d at 502 n.4. The superior court did not err by applying res judicata to bar Penner's claims.

## CONCLUSION

Penner's claims are barred by res judicata from the *Black* II litigation. Accordingly, we do not reach Penner's remaining arguments. We affirm the superior court's decision granting summary judgment to Sound Transit.

_____
PRICE, J.

We concur:

_____
MAXA, P.J.

_____
VELJACIC, J.